2004 WY 165

**In the Interest of KP, a minor, Appellant (Defendant),**

**v.**

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. C–04–6.**

Supreme Court of Wyoming.

Dec. 16, 2004.

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; Marion Yoder, Senior Assistant Public Defender. Argument by Ms. Yoder.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Dee Morgan, Assistant Attorney General. Argument by Ms. Morgan.

Before HILL, C.J., and GOLDEN, KITE, and VOIGT, JJ., and STEBNER, D.J. (Retired).

GOLDEN, Justice.

[¶ 1]   KP appeals from an order adjudicating him delinquent and the corresponding order of disposition. Finding that KP's adjudication was based upon one allegation that was determined pursuant to an inaccurate application of a statute, we remand the case for the entry of a new order of adjudication. Because the current order of adjudication must be vacated, the current order of disposition also is vacated. We remand for further proceedings consistent with this opinion.

## ISSUES

[¶ 2]   KP presents four issues for review by this Court:

I. Was there sufficient competent evidence adduced to prove appellant's delinquency beyond a reasonable doubt?

II. Was the value of the destroyed property assessed correctly to determine restitution?

III. Was there sufficient evidence to prove the destroyed property's value, a statutory prerequisite of the offense alleged?

IV. Were the procedural requirements of the Juvenile Justice Act met in the court's adjudication and disposition of appellant's case?

The State rephrases the issues:

I. Was plain error injected into the proceedings when appellant's confederates admitted they were previously adjudicated delinquent for acts stemming from the same circumstances as those leading to the delinquency action against appellant?

II. Was there sufficient evidence to support the juvenile court's findings concerning the amount of property damage for the purposes of both its delinquency adjudication and its award of restitution?

III. Did the juvenile court abuse its discretion when it calculated the amount of restitution owed by appellant?

IV. Did the proceedings against appellant comply with the Juvenile Justice Act?

## FACTS

[¶ 3] While there are many inconsistencies in detail, when viewed in the light most favorable to the State, testimony at the adjudica-

tory hearing generally revealed that, on the night of February 18, 2003, juveniles BE, DC, and KP were cruising around Casper in a Trans Am owned by DC's father. Eventually, the juveniles headed up Casper Mountain to smoke marihuana. After pulling over and smoking the marihuana, the juveniles continued up Casper Mountain. The juveniles saw a white Dodge Shadow abandoned on the side of the road and proceeded to break the windows and exterior lights of the vehicle. They then entered the vehicle and possibly took some items from the interior of the Dodge.

[¶ 4] Law enforcement investigated the vandalism and interviewed BE and DC. Law enforcement did not interview KP. Both BE and DC gave varying accounts of what happened the evening of the 18th in their initial interviews with law enforcement but eventually gave approximately the above story, both implicating KP from the beginning. A petition alleging KP delinquent was filed in juvenile court. The petition alleged two specific acts of delinquency: first, the petition alleged that KP violated Wyo. Stat. Ann. § 6–3–201(a) and (b)(iii) [1] by causing damage of more than $500 to the Dodge Shadow (hereinafter referred to as "felony property destruction" for the sake of simplicity); and second, the petition alleged that KP violated Wyo. Stat. Ann. § 6–3–301(a) and (b) [2] by entering the Dodge Shadow with the intent to commit larceny or a felony therein.

[¶ 5] At the adjudicatory hearing, each of the juveniles testified. DC specifically testified that, as the juveniles were driving on

1. § 6–3–201. **Property destruction and defacement; grading; penalties; aggregated costs or values.**

(a) A person is guilty of property destruction and defacement if he knowingly defaces, injures or destroys property of another without the owner's consent.

(b) Property destruction and defacement is:

(i) A misdemeanor punishable by imprisonment for not more than six (6) months, a fine of not more than seven hundred fifty dollars ($750.00), or both, if the cost of restoring injured property or the value of the property if destroyed is less than five hundred dollars ($500.00);

\* \* \* \*

(iii) A felony punishable by imprisonment for not more than ten (10) years, a fine of not

more than ten thousand dollars ($10,000.00), or both, if the cost of restoring injured property or the value of the property if destroyed is five hundred dollars ($500.00) or more.

2. § 6–3–301. **Burglary; aggravated burglary; penalties.**

(a) A person is guilty of burglary if, without authority, he enters or remains in a building, occupied structure or vehicle, or separately secured or occupied portion thereof, with intent to commit larceny or a felony therein.

(b) Except as provided in subsection (c) of this section, burglary is a felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,-000.00), or both.

Casper Mountain, they passed a 1990 Dodge Shadow abandoned on the side of the road. DC testified that the exterior of the vehicle looked to be "in pretty decent shape," with the possible exception of a crack in the front windshield. DC was driving and testified that he stopped the Trans Am when he saw the Dodge Shadow because he wanted to check to see if there was anything interesting in the Dodge. The Dodge was locked, and DC could not see inside, so he retrieved three tire irons or crowbars from the trunk of the Trans Am and handed one each to BE and KP, while keeping one for himself. The three juveniles proceeded to smash out the windows and exterior lights of the Dodge. DC then reached inside, unlocked the Dodge and entered the Dodge to see if there was anything interesting inside. DC testified that neither of the other juveniles entered the Dodge. After finishing with the Dodge, the juveniles returned to the Trans Am to leave but the Trans Am promptly got stuck in the snow. Attempts by the juveniles to free the Trans Am eventually proved futile, and DC and KP hiked down the mountain, eventually getting a ride from a passerby, and went to their respective houses. DC testified that BE stayed with the Trans Am because BE wanted to continue to try to free the Trans Am.

[¶ 6] BE testified that the Trans Am became stuck in the snow near the Dodge Shadow. After attempts to free the Trans Am failed, the juveniles turned their attention to the Dodge Shadow. BE testified that DC retrieved three tire irons or crowbars from the trunk of the Trans Am, and the three juveniles proceeded to break the windows and exterior lights of the Dodge. BE testified that he saw KP get into the Dodge after it had been unlocked but he did not see KP take anything from inside the Dodge. The juveniles, finished with the Dodge, tried again to free the Trans Am, without success. DC and KP walked down the mountain. BE testified he stayed behind to continue to try to free the Trans Am.

[¶ 7] KP testified that he was not with BE and DC when they went up Casper Mountain and was not involved in any way in vandalizing the Dodge. KP's mother testified that she was certain that KP was home in bed on the night in question. She testified that KP went to bed a little after ten o'clock p.m. and that she would have heard him if he had left the house at any point during the night.

[¶ 8] At the adjudicatory hearing the owner of the Dodge Shadow testified. The owner stated that he bought the car within a month before its vandalism for approximately $300 and that he still owned the Dodge. He also stated that he was able to drive the Dodge off the mountain to his house. The owner did not testify about the condition of the automobile before its vandalism. The owner never testified that the vehicle had been repaired so no actual costs of repair were ever introduced into evidence. The owner stated that, after the vandalism, he called one auto glass repair shop and told a person over the phone that he needed to replace all the glass on the Dodge Shadow. The auto glass repair shop sent him an estimate for the cost of glass replacement in the total amount of $1,684.87. The owner also contacted one repair shop seeking an estimate to replace the exterior lights and fix damage he alleged was done to the interior instrument console. He received an estimate to repair that damage in the total amount of $723.68. Neither repair shop saw the Dodge before submitting its estimate. The written estimates, both dated August 20, 2003, were submitted into evidence through the owner. No representative of either repair shop supplying the estimates testified. No testimony was offered explaining the individualized labor and parts entries of the estimates. The defense did not challenge the introduction of the hearsay repair estimates nor is it challenged in this appeal.

[¶ 9] After the adjudicatory hearing, the juvenile court adjudicated KP delinquent, finding that the State carried its burden of proof as to the felony property destruction claim. The juvenile court found that the State did not prove the burglary claim but did prove the lesser-included offense of criminal entry in violation of Wyo. Stat. Ann. § 6–

3–302.[3] The juvenile court appointed a Multidisciplinary Team (MDT) in its adjudicatory order. The MDT met once and recommended probation as the appropriate disposition for KP, noting that KP was maintaining stable employment and his employer was willing to supervise KP and allow KP to live with him.

[¶ 10] In its order of disposition, the juvenile court found the amount of damage to the Dodge to be $2,408.56 (it is unclear where the extra penny came from) and ordered KP to pay one third of the damage costs as restitution. The juvenile court further placed KP at the Jeffery C. Wardell Academy in Cheyenne indefinitely and imposed indefinite supervised probation on KP under the supervision of the Department of Family Services. The order does not contain any written reasons why the juvenile court did not accept the recommendation of the MDT, although the juvenile court did orally pronounce limited reasoning why it was not accepting the MDT's proposed disposition. The order of disposition does not contain any reference to a statutory sanction level.

## DISCUSSION

*Issues I & III. Sufficiency of evidence of delinquency*

[¶ 11] The basic argument presented by KP in his first issue is not a sufficiency of the evidence argument. KP argues it was error to allow the introduction of evidence that both BE and DC pled guilty to allegations stemming from the same incident as the one for which KP was being adjudicated. Rather than an insufficiency of evidence argument, this issue concerns only the admissibility of evidence.

---

**3.** § 6–3–302. **Criminal entry; penalties; affirmative defenses.**

(a) A person is guilty of criminal entry if, without authority, he knowingly enters a building, occupied structure, vehicle or cargo portion of a truck or trailer, or a separately secured or occupied portion of those enclosures.

**4.** W.R.Cr.P. 1(a), "Scope and definitions," states:

(a) Scope.—Except as provided in Rule 54, these rules govern the procedures to be followed in all criminal proceedings in all Wyoming

[¶ 12] We review a trial court's determination regarding the introduction of evidence for abuse of discretion. The burden of establishing the trial court abused its discretion is on the defendant. *Willis v. State,* 2002 WY 79, ¶ 16, 46 P.3d 890, ¶ 16 (Wyo. 2002). The Wyoming Rules of Criminal Procedure and the Wyoming Rules of Evidence apply to the adjudicatory phase of juvenile delinquency cases to the extent the rules do not conflict with any provision of the Juvenile Justice Act.[4]

[¶ 13] KP did not object to the introduction of testimony regarding the guilty pleas at his adjudicatory hearing so any objection is considered waived. Pursuant to W.R.A.P. 9.05, however, this Court may still determine if reversal is appropriate based upon a plain error analysis.[5] Plain error exists if the record clearly reflects the alleged error; a clear and unequivocal rule of law was transgressed; the transgression resulted in a substantial right being denied the defendant; and the denial of the substantial right materially prejudiced the defendant. *Porth v. State,* 868 P.2d 236, 242 (Wyo.1994). In other words, to reverse for plain error, we must find not only that there is error and that it is plain but also that it affected substantial rights and meets the discretionary test of seriously affecting the fairness, integrity, or public reputation of judicial proceedings. *Manes v. State,* 2004 WY 33, ¶ 8, 86 P.3d 1274, ¶ 8 (Wyo.2004).

[¶ 14] KP finds his clear and unequivocal rule of law in *Mazurek v. State,* 10 P.3d 531 (Wyo.2000), and *Kwallek v. State,* 596 P.2d 1372 (Wyo.1979). The evidentiary rule from *Mazurek* and *Kwallek* upon which KP relies states that "when two persons are indicted for separate offenses growing out of the

---

courts. When not inconsistent with the Juvenile Court Act, these rules shall also apply in delinquency proceedings. In the event that a procedure is not established by these rules, the Wyoming Rules of Civil Procedure shall govern.

W.R.E. 1101(b)(3) states that the Wyoming Rules of Evidence do not apply to "juvenile proceedings other than adjudicatory hearings."

**5.** Rule 9.05 Plain error.

Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court.

same circumstance, the fact that one has pleaded guilty is inadmissible against the other when offered by the State in its case-in-chief." *Grable v. State*, 601 P.2d 1001, 1003 (Wyo.1979) (citing *Kwallek*, 596 P.2d at 1375). "The rationale is that evidence of a witness' guilt for an offense which arose out of a circumstance leading to the defendant's trial implies that the defendant is also guilty. Such an implication violates a defendant's right to have a trial on its own merits." *Wells v. State*, 846 P.2d 589, 595 (Wyo.1992). *See Kwallek*, 596 P.2d at 1375 ("For a prosecutor to argue or elicit testimony disclosing that another has pleaded guilty is to argue from facts either not in evidence or facts which are inadmissible in evidence.").

[¶ 15]   The record is clear that BE and DC testified that they pled guilty to allegations of delinquency stemming from the vandalism of the Dodge. We do not find, however, that the rule from *Kwallek* and its progeny was transgressed. Instead, we find that the *Kwallek* rule is inapplicable under the particular facts and circumstances of this case. KP's defense was that BE and DC vandalized the Dodge, but he was not with them at the time. In his opening statement, KP's defense counsel remarked that BE and DC "apparently are involved and have admitted responsibility" in the vandalism of the Dodge, but that KP was not with them. KP made the fact that BE and DC had pled guilty to vandalizing the Dodge a key component of his defense. The theory of defense was that BE and DC were lying about KP's involvement in the vandalism of the Dodge in part so that their respective shares of restitution would be decreased. In short, it was the defense that initially introduced and stressed BE and DC's guilty pleas in order to impeach their testimony against KP.

[¶ 16]   BE was the first of the juveniles to testify for the State. On direct examination by the State, BE only testified to events of February 18 and 19. It was the defense attorney, on cross-examination, who questioned BE about BE's obligation to pay restitution. The defense presented, through questioning on cross-examination of BE, the possibility that BE was falsely implicating KP in the vandalism because BE could there-by lower his share of restitution. The State merely followed up on this line of questioning in its redirect of BE. On redirect, the State elicited that BE had pled guilty to vandalism of the Dodge and was ordered to pay restitution. The State also elicited that BE had appeared before a court when he pled guilty to that charge and he told the court the same facts on that occasion as he was telling at KP's adjudicatory hearing. The State thus presented BE's guilty plea to put in context BE's obligation to pay restitution and to rehabilitate his credibility. *Porth*, 868 P.2d at 241 ("Where the defense has invited the guilty plea testimony by its own introduction, there will only be reversible error if the prosecutor's use was not for the permissible limited evidentiary purpose of impeaching trial testimony or to reflect on a witness's credibility.").

[¶ 17]   The State did elicit testimony in its direct examination of DC that DC pled guilty to vandalizing the Dodge. However, the theory of defense was already apparent from opening statements and had been applied by the defense in its cross-examination of BE. On direct examination, the prosecutor elicited testimony from DC that he had lied on several occasions when asked by various people about the accounts of the evening of February 18. DC testified that he lied because he did not want to get in trouble. The prosecutor followed with a line of questioning presumably intended to bolster DC's credibility by eliciting the fact that DC did get in trouble when he finally told the "truth"—the story he was testifying to in court that day. Ultimately DC testified on direct examination by the State that he pled guilty to vandalizing the Dodge. The testimony, however, was not elicited as substantive evidence of KP's guilt by association but rather to bolster DC's credibility in anticipation of the impending attempt at impeachment by the defense. "[T]his court has recognized the principle that the State may properly introduce evidence of a witness' prior felony conviction on direct examination to lessen the sting of such an attack on cross-examination by the defense." *Adams v. State*, 2003 WY 152, ¶ 32, 79 P.3d 526, ¶ 32 (Wyo.2003) (citing *Gentry v. State*, 806 P.2d 1269, 1272 (Wyo. 1991)).

[¶ 18] The *Kwallek* rule precludes the State from presenting evidence of guilty pleas of accomplices in its case-in-chief under circumstances that might tend to implicate the defendant's guilt by association. In the case sub judice, the prosecutor never introduced evidence of guilty pleas of BE and DC for any reason other than to counter KP's claim of bias and his attacks on the credibility of BE and DC. The prosecutor never mentioned BE and DC's guilty pleas in her opening or closing statements and never argued that their guilty pleas in any manner reflected upon KP's guilt or innocence. The *Kwallek* rule was not violated.

[¶ 19]   Even if we were to find that a clear and unequivocal rule of law was transgressed, there is no prejudice to KP. KP used the guilty pleas and the resulting restitution requirements of BE and DC as the basis of his defense. Further, as a practical matter, as an integral part of their testimony both BE and DC testified that they vandalized the Dodge. In light of their full factual disclosure of their participation in the vandalism, the further disclosure that they had confessed to the criminal activity was not unduly prejudicial to KP. This is especially true since KP's defense was that BE and DC did vandalize the Dodge, but he was not with them when they did it. We are satisfied that any error did not have the clear capacity to produce an unjust result and that it had a minimal effect on the outcome of the hearing. *See generally Adams,*[6] ¶ 29.[7]

[¶ 20]   KP's third issue also is not a sufficiency of the evidence argument. The argument presented by KP consists of only one sentence: "The State failed to prove beyond a reasonable doubt that the actual pecuniary value of a 1990 Dodge Shadow, purchased ... for $300, met the statutory minimum of $500." The fundamental argument of the defense on this issue is that the $300 value of the car was the value upon which the State should have relied when making its allegations against KP in its delinquency petition.   The elements of felony property destruction are contained within § 6–3–201(b)(iii).   The pertinent parts of the statute read:

> (b) Property destruction and defacement is:
>
> (i) A misdemeanor punishable by imprisonment for not more than six (6) months, a fine of not more than seven hundred fifty dollars ($750.00), or both, if the cost of restoring injured property or the value of the property if destroyed is less than five hundred dollars ($500.00).
>
> * * * *
>
> (iii) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the cost of restoring injured property or the value of the property if destroyed is five hundred dollars ($500.00) or more.

Pursuant to the statute, the classification of the criminal offense depends upon the amount of damage; and the amount of damage potentially differs depending upon whether the property at issue was only "injured" or whether it was "destroyed."

[¶ 21]   In this case, the amount of damage differs substantially depending upon whether the Dodge is determined to be injured or destroyed. The owner of the Dodge testified at the adjudicatory hearing that he had purchased the Dodge for $300. The owner also introduced estimates to repair the vehicle that exceeded $2,400. KP questions which amount should be used in determining the classification of the offense.[8] On appeal, KP contends that the Dodge was destroyed, and the amount of damage suffered by the owner of the Dodge is the price he paid when he

---

6.   Please note, *Adams* did find a transgression of the rule but no prejudice. We have relied upon the reason for the rule to find no transgression, even if the letter of the rule was violated. *Adams* offered no analysis and very few facts except the prosecutor made some objectionable remarks in closing.

7.   At the end of KP's argument on Issue I, KP's brief also mentions "related reasons" requiring reversal, such as possible ineffectiveness of counsel and other alleged erroneous evidentiary rulings. None of these other issues are supported by appropriate cogent argument or pertinent authority. This Court does not condone the "shotgun" method of briefing and will not consider these arguments.

8.   KP does not challenge the sufficiency of this evidence regarding damage amount.

purchased the vehicle. The State, of course, claims the Dodge was only injured, since it was still drivable, and thus the damage must be measured by the cost to repair[9] the Dodge.

[¶ 22] Instead of a sufficiency of the evidence issue, this Court is actually presented with a question of statutory interpretation and application of the facts to the statute. This Court reviews questions of statutory interpretation de novo. The rules of statutory construction are well-established:

> In interpreting statutes, if the statutory language is clear and unambiguous, we must abide by the plain meaning of the statute. *Adobe Oil & Gas Corporation v. Getter Trucking, Inc.*, Wyo., 676 P.2d 560 (1984). If a statute is ambiguous, however, we will resort to general principles of statutory construction in the effort to ascertain legislative intent. *State v. Sodergren*, Wyo., 686 P.2d 521 (1984). A statute which is uncertain and susceptible of more than one meaning is ambiguous. *McArtor v. State*, Wyo., 699 P.2d 288 (1985). In addition, we have said that "[s]tatutes should be given a reasonable, practical construction." *State Bd. of Equalization v. Cheyenne Newspapers, Inc.*, Wyo., 611 P.2d 805, 809 (1980). Further, "all portions of an act must be read in pari materia, and every word, clause and sentence of it must be considered so that no part will be inoperative or superfluous," *Hamlin v. Transcon Lines*, Wyo., 701 P.2d 1139, 1142 (1985), and a statute should not be construed to render any portion of it meaningless, *Reliance Ins. Co. v. Chevron U.S.A. Inc.*, Wyo., 713 P.2d 766 (1986), or in a manner producing absurd results, *State v. Sodergren*, supra. Also, ambiguity in a criminal statute should be resolved in favor of lenity. *Capwell v. State*, Wyo., 686 P.2d 1148 (1984).

*Story v. State*, 755 P.2d 228, 231 (Wyo.1988). *See also Odhinn v. State*, 2003 WY 169, ¶¶ 13, 14, 82 P.3d 715, ¶¶ 13, 14 (Wyo.2003); *McAdams v. State*, 907 P.2d 1302, 1304 (Wyo. 1995).

[¶ 23] If this Court were to accept the State's argument, then simply because the Dodge could still be driven, it would be considered only injured and the damage amount would be over eight times the value of the car and the vandalism would constitute felony property destruction. The juveniles would have been in a much better position legally if they had completely destroyed the Dodge by damaging all of its component parts. The damage would then be the value of the Dodge—the $300 the owner paid for the vehicle. Their actions also would constitute misdemeanor property destruction instead of felony property destruction. As stated above, this Court will not interpret a statute in a manner producing absurd results.

[¶ 24] The statute lists "injury" and "damage" in the disjunctive. The statute does not define either term nor suggest under what circumstances one or the other should be relied upon by the State when charging a defendant. Under the peculiar facts of the case sub judice, this absence of legislative direction creates an ambiguity. Under the rule of lenity criminal defendants must receive the benefit of any ambiguity. We determine, therefore, that the classification of offense under this statute shall be determined by the cost to restore the injured property unless that determination exceeds the determination of the value of the property, had it been destroyed, in which case the property shall be deemed destroyed for purposes of this statute. In other words, where the total value of the entire item of property involved is less than $500 (now $1,000), but the cost to restore the property would be $500 (now $1,000) or more, the maximum damage chargeable is to be determined by the overall value of the entire item of property before the damage occurred.[10] *See gener-*

---

9. We note in passing that no argument has been made as to whether the statutory phrase "cost of restoring injured property" is synonymous with repair and replacement. We are able to reach our decision without addressing any possible distinction. We also need not ponder the statutory definition of "value" because the only evidence submitted regarding the value of the Dodge was the testimony of the owner that he paid $300 for the car.

10. Wyo. Stat. Ann. § 6–3–201 was amended in 2004 to increase the dollar amount distinguish-

*ally People v. Dunoyair,* 660 P.2d 890, 894–95 (Colo.1983) (en banc) ("Value is relevant to the damage element because an offender cannot cause an economic loss that surpasses the actual value of the property damaged. Thus, where the cost of repair or restoration exceeds the actual value of an object, the victim's economic loss will be limited to the actual value of the object.").

[¶ 25]  In this case, since the cost of repair to the Dodge is significantly higher than the value of the Dodge, the Dodge is deemed destroyed.  The State should have used the value of the Dodge when determining which classification to charge.  Since the evidence supported a value of $300 for the Dodge, KP's conduct, as a matter of law, did not violate the statutory classification of felony property destruction.  The finding of the juvenile court in the order of adjudication that KP committed felony property destruction is hereby vacated.

*Issues II and IV. Restitution and Procedure*

[¶ 26]  Because the order of adjudication must be vacated and a new order consistent with this opinion entered, a new dispositional hearing must be held.  Thus, the issues brought by KP concerning restitution and alleged procedural errors during the dispositional phase are technically moot.  Since some issues will potentially recur, however, this Court will briefly address the most salient issues raised by KP.

[¶ 27]  With regard to restitution, both parties present argument based upon Title 7, Chapter Nine of the Wyoming Statutes.  This chapter, however, does not apply to a juvenile delinquency action.  The juvenile court has authority to order restitution pursuant to Wyo. Stat. Ann. § 14–6–247(a)(v) (LexisNexis 2003), which states:

(a) For a child at any sanction level, the juvenile court may:

\* \* \* \*

(v) Require the child and his parents or guardian to make restitution for any dam-

ing misdemeanor property destruction from felony property destruction to $1,000.  2004 Wyo.

age or loss caused by the child's wrongful act, . . . .

With specific regard to restitution in a delinquency case, this Court has previously provided the following guidance:

[P]roceedings under the Juvenile Justice Act are not criminal, but are special proceedings.  *[In re ] BW,* 12 P.3d [675] at 677 [ (Wyo.2000) ].  The proceedings are equitable and not punitive to accomplish the purpose of providing "treatment, training and rehabilitation" for children, and to "provide for the care, the protection and the wholesome moral, mental and physical development of children coming within its provisions."  Wyo. Stat. Ann. § 14–6–201(c)(ii)(C) and (c)(iii) (LexisNexis 2001); see also *[In re ] WJH,* [2001 WY 54, 24 P.3d 1147] ¶¶ 9, 10.  Accordingly, statutes providing for the care and discipline of juvenile delinquents are generally entitled to a liberal effect and a practical construction in favor of the child's welfare.  *WJH,* ¶¶ 7, 8.  The plain language of the statute, however, still controls our search for the legislative intent when it used the term "restitution for any damage or loss caused by the child's wrongful act."  *Id.*

Plainly, the statute limits the amount of restitution to the damages or losses caused by the juvenile's wrongful act. . . . In *Alcaraz [v. State,* 2002 WY 57, 44 P.3d 68 (Wyo.2002)], we determined that restitution should be ordered to compensate for legally recognized losses that directly resulted from the criminal act.  *Alcaraz,* ¶ 14.  To comply with this rule in that case, the district court was required to distinguish between those damages that would compensate the victim for monetary losses and the benefits that would continue to inure to the victim and, thus, could not be subject to restitution lest the victim gain a windfall.  *Id.*

*TPJ v. State,* 2003 WY 49, ¶¶ 25, 26, 66 P.3d 710, ¶¶ 25, 26 (Wyo.2003) (emphasis omitted).  Thus, at the very least, any order of restitution in a juvenile delinquency case must be the result of a direct causal connection be-

Sess. Laws ch. 126, § 1.

tween the juvenile's delinquent act and the damages or losses incurred. Restitution cannot present a windfall to the victim.

[¶ 28] Of the procedural issues raised by KP in his fourth issue, under the circumstances only a few merit discussion. Because a new disposition must be entered, all procedures of the dispositional phase must be followed. The record does not disclose that a predisposition report was ever ordered, nor is there a predisposition report in the record. A predisposition report is required pursuant to Wyo. Stat. Ann. § 14–6–227(a) (LexisNexis 2003). Contrary to the argument of the State that the contents of a predisposition report are close enough to those required in an MDT report and thus the statutory requirement for a predisposition report may be disposed of, the two reports are different and serve different purposes. The statute is very clear that both reports are required. Upon remand, the juvenile court must order a predisposition report pursuant to statute.

[¶ 29] Further, upon remand an MDT must meet and fulfill its statutory duties, accounting for all new circumstances. Pursuant to Wyo. Stat. Ann. § 14–6–229(a)(i) (LexisNexis Supp.2004), the juvenile court shall review the predisposition report and the MDT report and must state on the record what materials it reviewed in reaching its disposition. If the juvenile court decides not to follow the recommendations of the predisposition report or the MDT, it "shall enter on the record specific findings of fact relied upon to support its decision to deviate from the recommended disposition[.]" Wyo. Stat. Ann. § 14–6–229(a)(ii) (LexisNexis Supp. 2004).

[¶ 30] With regard to the juvenile court's reaching disposition, while this Court has held that imposing a specific statutory sanction level is not mandatory, neither can the sanction levels be ignored with impunity. "The sole qualification to the juvenile court's broad sanction authority is, in the event of

deviation from the guidelines (§§ 14–6–245 through 14–6–252), the court must state its reasons in writing and enter the statement into the record. Section 14–6–246(d)." *In re WJH*, 2001 WY 54, ¶ 17, 24 P.3d 1147, ¶ 17 (Wyo.2001). The juvenile court is thus required to select a sanction level [11] and then either follow it or explain, in writing, why it is deviating from the statutorily defined sanctions applicable to the selected sanction level. *WJH*, ¶ 19 ("[S]anctions imposed which are different from any provided at any sanction level ... constitute a deviation and require written explanation. It also seems apparent that an adequate explanation of deviation from the guidelines would necessarily entail clarification of sanctions imposed that are different from any provided at any sanction level."). "The requirement for a written explanation to be made part of the record is eminently reasonable. It ensures the juvenile court has carefully considered the relevant circumstances, has set forth its rationale, and has provided a basis for appellate review." *WJH*, ¶ 18 (specifically delineating a non-exclusive list of relevant factors for a juvenile court to consider, in writing and placed on the record, in reaching its determination of disposition). We trust the juvenile court will comply with this requirement in its new order of disposition.

## CONCLUSION

[¶ 31] When charging KP with felony property destruction under § 6–3–201, the State, by statute, was required to use the $300 value of the property, not the $2,400 cost of repairing the property. Because the value of the Dodge was less than $500, the appropriate charge was misdemeanor property destruction. Because the juvenile court incorrectly found that KP committed felony property destruction, the order of adjudication is vacated. The case is remanded with directions for a new order adjudicating KP

---

11. The juvenile court did mention the potential sanction levels corresponding to the conduct alleged in the petition for adjudication of delinquency at KP's initial appearance. The actual sanction level, however, obviously cannot be selected until after adjudication, when the full nature of the delinquent activity has been judicially determined. Selecting a sanction level based upon adjudicated conduct is a critical component of disposition.

delinquent based upon only criminal entry in violation of § 6–3–302. Given the difference in the adjudicated delinquent activity, a new disposition must be ordered. The current dispositional order is vacated. This case is remanded for further proceedings consistent with this opinion.