2007 WY 200

**Gregory Dan RODEN, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 06–204.

Supreme Court of Wyoming.

Dec. 17, 2007.

Representing Appellant: Robert T. Moxley, Robert T. Moxley, P.C., Cheyenne, Wyoming.

Representing Appellee: Patrick J. Crank, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Jessica Schneider, Student Intern. Argument by Ms. Schneider.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Gregory Dan Roden was convicted of felony property destruction [1] in violation of

---

**1.** The statute is entitled "Property destruction and defacement," but the crime has been "re-      ferred to as 'felony property destruction' for the

Wyo. Stat. Ann. § 6–3–201(a) (LexisNexis 2007). This crime is a felony "if the cost of restoring injured property or the value of the property if destroyed is one thousand dollars ($1,000.00) or more." *Id.* § 6–3–201(b)(iii). The jury found that Mr. Roden had caused damages exceeding the threshold, and he was convicted of a felony. His appeal rests on contentions that the State did not prove, beyond a reasonable doubt, that he caused damages in excess of $1,000. We affirm.

## ISSUES

[¶ 2] We phrase Mr. Roden's issues as follows:

1. What is the proper measure of damages under Wyo. Stat. Ann. § 6–3–201(b)(iii)?

2. Did the State present sufficient evidence to prove that the damages amounted to $1,000 or more?

3. Was the jury properly instructed on the measure of damages?

## FACTS

[¶ 3] The parties provide sharply differing explanations of why Mr. Roden ended up driving a pickup that belonged to David Mortenson, but those details are not significant here. It is undisputed that Mr. Roden was intoxicated when he drove the pickup into the parking lot of the Casper hotel where he was staying. After parking the pickup, Mr. Roden used a hammer to break the windshield, the side windows, and the plastic windows of the attached camper shell. He then went to his hotel room, and left the keys to Mr. Mortenson's pickup in the trash can.

[¶ 4] Mr. Roden was charged with stealing the pickup, but the jury found him not guilty on that charge. Mr. Roden was also charged with felony property destruction. A major issue at his trial was the amount of damages. In the discussion below, we examine more closely the testimony about the cost of replacing the windows, and the defense's cross-examination eliciting information to the effect that used glass was cheaper than new glass. The jury specifically found that the value of the damage exceeded $1,000, and

sake of simplicity." *KP v. State,* 2004 WY 165,

convicted Mr. Roden of the felony charge. He challenges that conviction in this appeal.

## DISCUSSION

### What is the appropriate measure of damages under Wyo. Stat. Ann. § 6–3–201(b)(iii)?

### Standard of Review

[¶ 5] This issue presents a question of statutory interpretation. We apply a *de novo* standard of review, using well-established rules of statutory construction:

> In interpreting statutes, if the statutory language is clear and unambiguous, we must abide by the plain meaning of the statute. If a statute is ambiguous, however, we will resort to general principles of statutory construction in the effort to ascertain legislative intent. A statute which is uncertain and susceptible of more than one meaning is ambiguous. In addition, we have said that statutes should be given a reasonable, practical construction.

*KP v. State,* 2004 WY 165, ¶ 22, 102 P.3d 217, 224 (Wyo.2004) (internal citations and punctuation omitted).

### Discussion

[¶ 6] Employing the familiar rules of statutory construction, we begin with the language of the statute. Wyo. Stat. Ann. § 6–3–201(a) provides that "A person is guilty of property destruction and defacement if he knowingly defaces, injures or destroys property of another without the owner's consent." Wyo. Stat. Ann. § 6–3–201(b)(iii) further provides that the crime is a felony "if the cost of restoring injured property or the value of the property if destroyed is one thousand dollars ($1,000.00) or more."

[¶ 7] We previously observed that this statute contains disjunctive language—"defaces, injures or destroys"—so that a person may be convicted for any one of the three acts of defacing, injuring, or destroying property. *Christian v. State,* 883 P.2d 376, 380

¶ 4, 102 P.3d 217, 219 (Wyo.2004).

(Wyo.1994).[2] Mr. Roden was specifically charged with injuring property, not destroying or defacing it. In such a case, the statute provides that the proper measure of damages is "the cost of restoring injured property." Wyo. Stat. Ann. § 6–3–201(b)(iii).

[¶ 8] We have considered this measure of damages in a previous case involving broken car windows. In that case, the evidence indicated that the total value of the car was $300, while estimates to repair the car amounted to more than $2,000. We held that the amount of the damages:

> shall be determined by the cost to restore the injured property unless that determination exceeds the determination of the value of the property, had it been destroyed, in which case the property shall be deemed destroyed for purposes of this statute. In other words, where the total value of the entire item of property involved is less than $500 (now $1,000), but the cost to restore the property would be $500 (now $1,000) or more, the maximum damage chargeable is to be determined by the overall value of the entire item of property before the damage occurred.

*KP*, ¶ 24, 102 P.3d at 224. This case established total value as an upper limit on damages, but did not change the basic measure of damages to injured property, which is the cost of restoration. We find no ambiguity in the statute with regard to this broad measure of damages.

[¶ 9] Mr. Roden raises two specific questions about the application of this measure of damages to his case. First, while there is no dispute that Mr. Mortenson's pickup was worth more than the cost of restoration, there was some evidence that the camper shell, by itself, was worth less than the cost of restoring its plastic windows. Mr. Roden never states the argument this succinctly, but his claim appears to be that, following *KP*, ¶ 24, 102 P.3d at 224, the proper measure of damages for the camper shell was not the cost of replacing its windows, but the value of the camper shell. Put another way, he asserts that the camper shell should not be treated as part of the damaged pickup, but rather as a separate item that was completely destroyed.

[¶ 10] Second, he points out that the pickup was used, so the broken windows were also used. He then cites evidence from his trial suggesting that used glass is less expensive than new glass. On that basis, he claims that the proper measure of damages to the pickup was the cost of replacing the windows with used glass, not with new glass.

[¶ 11] The cases and other authorities cited by the parties do not help us to address these two specific questions. We have found no helpful Wyoming criminal law cases. We note, however, that some civil cases apply a measure of damages similar to that set forth in Wyo. Stat. Ann. § 6–3–201(b)(iii). When a homeowner sued in tort for damages to the basement of his house, we said that the measure of damages for "property which can be repaired and substantially restored to its former condition is the reasonable cost of repair or restoration." *South Cheyenne Water & Sewer Dist. v. Stundon*, 483 P.2d 240, 243 (Wyo.1971). *See also Kirby Bldg. Systems v. Mineral Explorations Co.*, 704 P.2d 1266, 1269 (Wyo.1985). We conclude that, in the criminal context as well, the measure of damages is the reasonable cost of restoration. What is reasonable, however, is a question of fact for the jury:

> Valuation of property is a question of fact, and there is no universal standard for such a determination. Thus, the question is left to the trier of fact to be decided on the basis of the facts and circumstances of each case. *D'Arge [v. Davis]*, 710 P.2d 830 [(Wyo.1985)]. We have said that damages must be susceptible of ascertainment with a reasonable degree of certainty, *Reiman Construction Company v. Jerry Hiller Company*, 709 P.2d 1271 (Wyo.1985); *Cates v. Barb*, 650 P.2d 1159 (Wyo.1982), and that a court may not speculate or conjecture in awarding damages. *Broyles [v. Broyles]*, 711 P.2d 1119 [(Wyo.1985)]; *State Highway Commission of Wyoming*

---

**2.** This statutory language considered in that case was identical except that, in 2004, the legislature amended the statute by increasing the threshold for a felony conviction from $500 to $1,000. 2004 Wyo. Sess. Laws ch. 126, § 1.

*v. Brasel & Sims Construction Co., Inc.,* 688 P.2d 871 (Wyo.1984). We further observed in *Douglas Reservoirs Water Users Association v. Cross,* 569 P.2d 1280, 1284 (Wyo.1977), quoted in *Reiman Construction Company,* 709 P.2d at 1277, that:

> While damages may not be calculable with absolute certainty, they should be susceptible of ascertainment with a reasonable degree of certainty and if there is evidence from which a reasonable estimate of money damages may be made that is sufficient, the primary objective being to determine the amount of loss, applying whatever rule is best suited to that purpose.

*O's Gold Seed Co. v. United Agri–Products Fin. Servs.,* 761 P.2d 673, 676 (Wyo.1988).

[¶ 12]  Mr. Roden would have us establish, as a matter of law, that the only proper way to measure the damages is to consider the cost of used glass for the pickup windows, and to consider the camper shell as a separate item. However, we think that the jury should have more flexibility when it applies "whatever rule is best suited" to determine the amount of damages in a particular case. That flexibility is somewhat reduced in criminal cases where the statute specifies the measure of damages, but within the statutory limits, it is still appropriate to tailor the measure of damages to fit the circumstances of a criminal case. Applying this guidance to Mr. Roden's case, we conclude that it was up to the jury to decide the reasonable cost of restoring Mr. Mortenson's pickup, and as part of that decision, to determine whether to use the cost of used glass or new for the pickup windows, and whether the camper shell was part of the pickup or a separate item.

[¶ 13]  In theory, used items could be restored with similarly used items, and their value measured by the cost of the used items. In reality, there is a ready market for some used items, but not for others. Used vehicles are readily marketable, for example, and prices for used vehicles can be easily established. In contrast, "second-hand household goods in use do not have a market value in the ordinary sense." *Shikany v. Salt Creek Transp. Co.,* 48 Wyo. 190, 203, 45 P.2d 645,

649 (Wyo.1935). It was up to Mr. Roden's jury to consider whether there is the sort of market for used window glass that would make it reasonable to purchase used glass to restore the windows of Mr. Mortenson's pickup, or, on the other hand, whether there really is no such market so that it was reasonable to restore the pickup with new window glass. Similarly, it is appropriate for the jury to apply its common sense in deciding whether to consider the camper shell as part of Mr. Mortenson's pickup or as a separate item.

[¶ 14]  In sum, the statute unambiguously provides the broad measure of damages, which is the cost of restoring Mr. Mortenson's pickup. The detailed application of that measure of damages to the circumstances of Mr. Roden's case, such as whether the camper shell was part of the pickup or a separate item, and whether the windows should be replaced with new or used glass, are questions of fact that should be determined by the jury.

### Did the State present sufficient evidence to prove that the damages amounted to $1,000 or more?

#### Standard of Review

[¶ 15]  In considering this challenge to the sufficiency of the evidence, our basic consideration is whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. We view the evidence in a light most favorable to the successful party, and afford every favorable inference that may fairly be drawn from the successful party's evidence. We do not substitute our judgment for that of the jury. Instead, we determine whether a quorum of reasonable and rational individuals could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Rawle v. State,* 2007 WY 59, ¶ 21, 155 P.3d 1024, 1030 (Wyo. 2007); *Blakeman v. State,* 2004 WY 139, ¶ 11, 100 P.3d 1229, 1233 (Wyo.2004).

[¶ 16]  Mr. Roden contends that sufficiency of the evidence is not the issue. He asserts, in effect, that the State's evidence involved only the cost of replacing the plastic

windows in the camper shell, rather than the cost of the camper shell as a separate item, and only the cost of using new glass in the pickup windows, rather than the cost of used glass. This leads to his contention that the evidence was not merely insufficient, but indeed incompetent to prove that the damages he caused exceeded the $1,000 felony threshold. However, we have rejected Mr. Roden's invitation to establish, as a rule of law, that the camper shell must be considered as an item separate from the pickup, or that the cost of used window glass is the proper measure of damage. We have concluded that these are matters for the jury to determine. Accordingly, the State's evidence was not incompetent. The question remains whether the evidence was sufficient to allow the jury to determine that the damages caused by Mr. Roden exceed the $1,000 threshold, and we will conduct that review under the standard set forth above.

### Discussion

[¶ 17] At trial, a used car dealer testified that Mr. Mortenson's pickup had a retail value of about $5,500. The camper shell alone, he said, would cost about $1,000 new, but one in used condition similar to Mr. Mortenson's could be purchased from "a junkyard or something" for $200 to $400. Of course, the State never argued that the proper measure of damages was the value of the pickup. Presumably, the State introduced evidence of the pickup's value to prove, pursuant to the requirement established in *KP*, ¶ 24, 102 P.3d at 224, that the cost of restoring the windows did not exceed the overall value of the pickup.

[¶ 18] With regard to the cost of restoring the pickup, Mr. Mortenson testified that he paid $1,715 to an automobile glass company to fix the windows on his pickup and camper shell. A manager from that company confirmed that the cost of replacing the broken windows totaled $1,715.79. He testified that the labor and materials for fixing the camper shell alone amounted to about $310. He also indicated, contrary to Mr. Roden's contention that all of the pickup windows were used, that the windshield of the pickup was relatively new, having been replaced about a month before the incident.

[¶ 19] On cross-examination, he was asked about the possibility of replacing the windows with used glass.

Q. Now, is there a secondary market for the windows that were broken out of the vehicle? In other words, can you go to a junkyard and get that glass?

A. Not when you're dealing with an insurance company. They don't pay that.

Q. Okay. But if you were just dealing with it as a person instead of dealing with it as an insurance—

A. It would be possible to do if you could find it.

Q. And in your experience, is it significantly cheaper to go buy glass that's been broken like that from a secondary market?

A. Some, yes.

Q. How much total was spent on the actual glass? ... My math comes to about $850. Does that sound about right -

A. Close.

Q.—for the glass? Would it be safe to say if you bought it on the secondary market, you could probably buy it for about 200 bucks?

A. Depends on who you get it from, yeah. . . .

Q. So what was the total that you actually spent in labor just on the truck not on the topper? ... $45 times 5 would be $225; right?

A. Uh-uh.

Q. In labor?

A. Right.

Q. So if the topper—if you could go buy—this is hypothetical.

A. Okay.

Q. If you could go buy the topper for 200 bucks, and the labor would cost $225 and you could buy the glass on the secondary market for $200, if a guy didn't have insurance, he could have fixed everything that we were looking at there for about $625?

A. Give or take a little.

[¶ 20] Our standard of review requires us to view the evidence in the light most favor-

able to the State. The State presented evidence that the actual cost of repairing the windows in the pickup and camper shell was $1,715. Based on that information, rational jurors could conclude, beyond a reasonable doubt, that the damages caused by Mr. Roden exceeded the $1,000 felony threshold. The defense was allowed to present evidence suggesting that the $1,715 figure was too high, and to present arguments to that effect in closing. The jurors may simply have been unconvinced by the defense's efforts to discredit the State's evidence. Notably, the State, in redirect examination, questioned the glass company manager about the availability of used glass of the kind needed to fit Mr. Mortenson's pickup:

Q. Do we even know that that particular used glass was available in Casper in those measurements?

A. It's hard to say. You'd have to do a bunch of calling. Chances of finding that particular glass are probably pretty slim.

Given this evidence, it would have been reasonable for the jury to determine that it was impractical, impossible, or unreasonable to replace the broken pickup windows with used glass. The record includes sufficient evidence to support the jury's decision that Mr. Roden had caused more than $1,000 in damages.

### Was the jury properly instructed on the measure of damages?

#### Standard of Review

[¶ 21] We review jury instructions under the following standard:

It is well settled that a trial court has a duty to instruct a jury regarding the general principles of law applicable to the case. On appellate review, jury instructions must be considered as a whole, and individual instructions, or parts thereof, should not be singled out and considered in isolation. A trial court is given wide latitude in instructing the jury and, as long as the instructions correctly state the law and the instructions in their entirety sufficiently covers the relevant issue, reversible error will not be found. The accuracy of an instruction is a question of law which is reviewed *de novo*.

*Duke v. State,* 2004 WY 120, ¶ 90, 99 P.3d 928, 954 (Wyo.2004) (internal citations omitted); *see also Seymore v. State,* 2007 WY 32, ¶ 9, 152 P.3d 401, 404 (Wyo.2007).

#### Discussion

[¶ 22] Mr. Roden's appeal focuses solely on the proper measure of damages. Thus, while our review encompasses the jury instructions as a whole, we also focus on the two instructions relating to the measure of damages. Instruction 9 presented the jury with the elements of the crime:

The elements of the crime of Property Destruction and Defacement—the Cost of Restoring the Injured Property being $1,000.00 or [m]ore, as charged in Count One of the Amended Information in this case, are:

1. On or about the 8th day of January, 2005,

2. In Natrona County, Wyoming,

3. The Defendant, Gregory Dan Roden,

4. Knowingly injured the property of another,

5. Without the consent of the owner,

6. And the cost of restoring the injured property was $1,000.00 or more.

Instruction 13 informed the jury that:

In determining the value of property destroyed or defaced, or the cost of restoring injured property, if you find beyond a reasonable doubt that the defendant engaged in a single continuing course of conduct in which he knowingly defaced, injured or destroyed more than one item of property of another without the owner's consent, you may consider all such property in finding the value or cost of restoration.

[¶ 23] Mr. Roden's brief does a poor job of articulating his objections to the jury instructions. Broadly stated, his contention seems to be that the instruction did not reflect his proposed measure of damages. At trial, after the jury had been instructed but before they were sent to deliberate, counsel for Mr. Roden asked for a jury instruction that the measure of damages "is the reasonable amount of money to restore that property to—the cost of restoring the

injured property, the reasonable cost of restoring the injured property. Not what somebody paid for it, but what the reasonable cost to restore is." The trial court denied the request, largely on the basis that the statute did not include the word "reasonable," and that the instructions were "almost verbatim from the pattern jury instruction[s]." *See Wyoming Criminal Pattern Jury Instructions* (2004), Instructions 32.01A and 32.01B.

[¶ 24] As noted above, the trial court is given wide latitude in instructing the jury. Given our conclusion that the jury could consider the "reasonable cost of repair or restoration," *South Cheyenne Water & Sewer Dist.*, 483 P.2d at 243, it might have been appropriate for the trial court to insert the word "reasonable" in the instructions concerning value. However, it was certainly not reversible error for the trial court to adhere to the language of the statute and the pattern jury instructions and refuse the last-minute request to change the jury instructions. Because we have rejected Mr. Roden's request to limit the jury's consideration solely to the value of used glass to replace the pickup windows, or to the value of the camper shell as a separate item from the pickup, we cannot say that the instructions, as given, were not a correct statement of the law, or did not sufficiently cover the relevant issue. There is no basis for reversing the trial court's ruling.

[¶ 25] We affirm.