In re N.G., Appellant.

No. 09–FS–188.

District of Columbia Court of Appeals.

Submitted Oct. 26, 2010.

Decided Dec. 9, 2010.

Jennifer J. Bingham, for appellant.

John J. Woykovsky, Assistant Attorney General, D.C., submitted a brief with Peter J. Nickles, Attorney General, Todd S. Kim, Solicitor General, and Rosalyn Calbert Groce, for appellee.

Before WASHINGTON, Chief Judge, and REID, Associate Judge, and WAGNER, Senior Judge.

REID, Associate Judge:

Appellant N.G. appeals from the trial court's judgment ordering him to pay restitution for damage to a stolen vehicle. In light of the requirements of our juvenile restitution statute and in the absence of the resolution of the motion for reconsideration filed in the trial court, we are constrained to vacate the court's restitution order and to remand this case for further proceedings consistent with this opinion.

## FACTUAL SUMMARY

The record reflects that on October 25, 2008, officers of the Metropolitan Police Department witnessed N.G. driving a 1996 Dodge Caravan that they suspected was stolen. A check of a stolen vehicle database confirmed their suspicion. The officers stopped N.G. and two other persons as they exited the vehicle. N.G. was arrested and charged with unauthorized use of a vehicle and receiving stolen property.[1]

On November 6, 2008, N.G. entered an "involved" plea to unauthorized use of a vehicle, and the government dismissed a receiving stolen property charge. In its proffer of proof, the District indicated, in part, that N.G. was the driver of the stolen vehicle at the time of his arrest and that inspection revealed "a punched right front door lock and a punched ignition."[2] The District agreed not to oppose probation but reserved the right to request restitution. The trial court scheduled disposition for January 13, 2009, as well as the restitution matter. N.G. did not appear for the hearing on January 13, and the trial court issued a custody order.[3] The trial judge proceeded with the restitution hearing. The owner testified that his vehicle was damaged after it was stolen and his insurance company estimated that it would cost $5,019.47 to repair it. The owner further testified that he still had repair costs related to the damages in the amount of $2,434.72, which he would accept as the restitution amount. The court entered an order requiring N.G. to pay the $2,434.72 as restitution.

## ANALYSIS

N.G. challenges the trial court's restitution order which was issued pursuant to D.C.Code § 16–2320.01.[4] He primarily contends that the trial court abused its discre-

---

1. D.C.Code §§ 22–3215 and –3232 (2001).

2. The District's proffer also revealed that "[t]he remains of the ignition were located on the floor, between the front seats, and a large rock was located underneath the center of the rear seat."

3. The trial judge revealed that he had spoken with N.G.'s mother on the previous day; she thought the hearing had been scheduled for January 12. N.G.'s mother was not present on January 13.

4. D.C.Code § 16–2320.01 (2001) provides in pertinent part:
   (a)(1) Upon request of the Corporation Counsel, the victim, or on its own motion, the Division may enter a judgment of restitution in any case in which the court finds a child has committed a delinquent act and during or as a result of the commission of that delinquent act has:
   (A) Stolen, damaged, destroyed, converted, unlawfully obtained, or substantially decreased the value of the property of another;
   . . . .

tion in issuing the order because (1) the amount of restitution is "excessive" given his age and inability to pay, (2) the restitution order unjustly applied only to him and not the two adults who were also in the vehicle when N.G. was apprehended, and (3) the trial court failed to follow the statutory provisions.

Before considering these arguments, we briefly review the restitution proceeding. The trial judge stated that N.G. had a right to be present for the restitution hearing but had forfeited that right. The owner of the stolen car, Herman Hicks, Jr., testified that his insurer, Allstate, estimated his loss as $5,019.47 minus the deductible of $50.00. Allstate wanted to total the car, but Mr. Hicks wanted it back. Therefore, Mr. Hicks arranged with Allstate to buy the car from them. He testified that the additional cost of repair for the damages to the car was $2,434.72, which he would accept as the restitution amount.[5] The trial judge admitted photographs showing damage to the outside of the vehicle. Mr. Hicks insisted that the damage reflected was not there before the car was stolen. At the end of Mr. Hicks's testimony, the trial court granted the restitution request in the amount of $2,434.72. Defense counsel pointed out that there were three persons involved and that N.G. should be responsible for only one-third of the restitution amount. The trial judge declared that he had jurisdiction only over N.G.; the other two persons were prosecuted as adults.

N.G. appeared in court the following

(2) The Division may order the parent or guardian of a child, a child, or both to make restitution to:
(A) The victim; . . . .
(b) The Division may order the child to make restitution directly to the victim, governmental entity, or third-party payor after consideration of the age, circumstances, and financial ability of the child to pay. The Division may order the parent or guardian to make restitution directly to the victim, governmental entity, or third-party payor after consideration of the parent or guardian's financial ability to pay.
(c)(1) A judgment of restitution under this section may not exceed:
(A) As to property stolen, destroyed, converted, or unlawfully obtained, the lesser of the fair market value of the property or $10,000;
(B) As to property damaged, or substantially decreased in value, the lesser of the amount of damage or the decrease in value of the property, not to exceed the fair market value of the property, or $10,000;
. . . .
(d) A restitution hearing to determine the liability of a parent or guardian, a child, or both, shall be held within 30 days after the disposition hearing and may be extended by the Division for good cause. A hearing under this section may be held as part of a factfinding or disposition hearing for the child. A judgment of restitution against a parent or guardian may not be entered unless the parent or guardian has been afforded a reasonable opportunity to be heard and to present appropriate evidence in the parent or guardian's behalf.
. . . .
(i) If at the restitution hearing the Division finds that a child is financially unable to pay restitution pursuant to subsection (b) of this section, the Division may order the child to perform community service or some other non-monetary service of equivalent value in lieu thereof. If at the restitution hearing the Division finds that a parent or guardian is financially unable to pay restitution pursuant to subsection (b) of this section, the Division may order the parent or guardian to perform community service or some other non-monetary service of equivalent value in lieu thereof.

5. Mr. Hicks wanted to include any cost incurred in tracing a gasoline smell that emanated from his vehicle. However, the trial judge explained that because of a statutory limit of 30 days following the disposition hearing, he needed to resolve the issue on that day because he could not "have another hearing on this."

day.[6] He declared that he did not punch the ignition, that it was already out at the time he drove the car, and he maintained that the only damage he caused was to the front left light of Mr. Hicks's car. He did not believe that he should be responsible for all of the restitution because there were two other persons involved. The trial court expressed willingness to reconsider the restitution order. The judge believed that N.G. could be held liable for all the damage to Mr. Hicks's car, but he asked defense counsel to provide a legal memorandum to assist in the resolution of the proportional liability issue raised by N.G. The court proceeded to announce the disposition of the case.[7]

On February 11, 2009, N.G. filed a motion requesting reconsideration of the restitution order. He contended, in part, that there was no evidence that he had caused the damages to Mr. Hick's vehicle, he did not have the financial ability to pay the restitution amount, and the trial court should have considered the financial status of his parents.[8] During a hearing on February 12, 2009, at which N.G. was present, the court inquired as to how much N.G. made at his job. N.G. stated $7 per hour.[9] The trial court did not resolve the motion for reconsideration during the hearing, but stated that it would issue a written restitution order.

We have never construed the District's juvenile restitution statute. D.C.Code § 16–2320.01(a)(1)(A) provides that the trial court "may enter a judgment of restitution in any case in which the court finds a child has committed a delinquent act and during or as a result of the commission of that delinquent act has: [s]tolen, damaged, ... or substantially decreased the value of the property of another...." Section 16–2320.01(b) specifies that the court "may order the child to make restitution directly to the victim ... after consideration of the age, circumstances, and financial ability of the child to pay." Section 16–2320.01(d) mandates that "[a] restitution hearing to determine the liability of ... a child ... shall be held within 30 days after the disposition hearing and may be extended ... for good cause." And, § 16–2320.01(i) states that "[i]f at the restitution hearing the [court] finds that a child is financially unable to pay restitution pursuant to subsection (b) of this section, the [court] may order the child to perform community service or some other non-monetary service of equivalent value in lieu thereof."

▮ To interpret a statute, "[w]e look to the plain meaning of the statute first, construing words according to their ordinary meaning." *Abadie v. District of Columbia Contract Appeals Bd.*[10] "The literal

6. N.G. informed the judge that he mistakenly thought that the hearing on January 13 was scheduled for 4 p.m. rather than earlier in the day, and that he arrived at 4 p.m.

7. The court closed the PINS (person-in-need-of supervision) case, placed N.G. on one year of probation, imposed drug education and electronic monitoring, ordered N.G. to attend school and to continue his employment, and eliminated the requirement of 90 hours of community service. However, the court later specified "either 90 hours of community service or employment."

8. N.G.'s motion revealed that as a result of his failing grades at Anacostia High School, he was the subject of a PINS petition.

9. The record does not indicate how many hours N.G. worked at his job. At a prior hearing, N.G.'s probation officer indicated that he worked at Wendy's after school. N.G. was a high school student at the time. The probation officer pointed out that N.G. had had a positive drug test. And defense counsel informed the court that N.G. needed a tutor because he was having problems in his English class.

10. 843 A.2d 738, 741 (D.C.2004) (citation omitted).

words of [a] statute, however, are not the sole index to legislative intent, but rather, are to be read in light of the statute taken as a whole, and are to be given a sensible construction and one that would not work an obvious injustice." *Id.*[11] "In appropriate cases, we also consult the legislative history of a statute." *Id.*[12]

■ "The trial court has broad discretion in imposing a restitution order under the statute." *Southall v. United States.*[13] But, that discretion "controls [only if] there is a factual basis in the record to support the court's determination of the amount of the restitution." *Sloan v. United States.*[14]

To place the restitution provision in context, it is appropriate to turn to the Council's overall legislative intent. The Council of the District of Columbia added D.C.Code § 16–2320.01 to its juvenile justice provisions as part of an omnibus revision in 2004. The revision was "intended to strengthen the juvenile justice system by effectively balancing the competing concerns of protection of public safety and the rehabilitation of juvenile offenders."[15] The Council sought "to achieve that balance by ensuring greater accountability on the part of youth, parents, and caretakers, meeting the needs of crime victims and assuring their safety; ... and improving services to youth who enter the juvenile justice system."[16] D.C.Code § 16–2320.01

focused on the right of a victim to restitution in cases where the juvenile or his parent(s) have the ability to pay. As the Committee Report stated: "This section ... allows a [j]udge to order, after consideration of their ability to pay, a child or his parent or guardian to pay restitution for property loss.... The [j]udge may also order other non-monetary forms of restitution, such as community service."[17]

■ Under the plain meaning of the statute, there are at least two requirements before a judge may issue a restitution order involving a juvenile. First, under § 16–2320.01(a)(1), the judge must find that the juvenile not only "has committed a delinquent act" but also that the damage to a victim's property is "a result of that delinquent act." Here, the trial court accepted N.G.'s plea to the charge of unauthorized use of a vehicle; this plea alone did not constitute an admission that N.G. caused damage to Mr. Hicks's vehicle. The record shows no factual findings relating to the cause of the damage to the vehicle. The only evidence in the record that N.G. caused any damage to the vehicle was his admission that he was responsible for damage to the front left light. But, under the juvenile restitution statute, it is essential to establish the causal connection between the juvenile's delinquent act and the damage to the victim's property. The District's statute is virtually identical to

---

11. 843 A.2d at 741–42 (citing *District of Columbia v. Gallagher*, 734 A.2d 1087, 1091 (D.C.1999)) (internal quotation marks and other citation omitted).

12. 843 A.2d at 742 (citing *Kelly v. District of Columbia*, 765 A.2d 976, 978 (D.C.2001)).

13. 716 A.2d 183, 187 (D.C.1998) (citation omitted).

14. 527 A.2d 1277, 1290 (D.C.1987) (citations omitted).

15. COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON THE JUDICIARY, COMMITTEE REPORT, Bill 15–537, the "Omnibus Juvenile Justice Amendment Act of 2004", June 22, 2004 ("Committee Report"), at 1.

16. Committee Report, at 1.

17. Committee Report, at 13.

Maryland's in this respect,[18] and the Maryland Court of Appeals has said that "the key words in [its] statute are the requirements that the court find that 'a child has committed a delinquent act and during the commission of that delinquent act' has done certain things." [19]

▉ Even assuming we could infer that N.G. caused the damage to the ignition and the other parts of the vehicle, we would be confronted with a second statutory problem. Section 16–2320.01(d) plainly states: "A restitution hearing to determine the liability of a parent or guardian, a child, or both, *shall* be held within 30 days after the disposition hearing and may be extended by the [court] for good cause shown." In addition, § 16–2320.01(b) clearly directs the trial judge not to impose restitution before considering "the age, circumstances, and financial ability of the child to pay," and under § 16–2320.01(i) the court may order the juvenile "to perform community service or some

other non-monetary service of equivalent value" when it "finds that a [juvenile] is financially unable to pay restitution." The restitution hearing is mandatory.

The record shows that N.G. was a failing high school senior in need of tutoring, that he had a part-time job earning $7.00 an hour, and that he had a drug problem. However, there is no indication in the record that the trial court actually considered the statutory factors of N.G.'s "age, circumstances, and financial ability to pay," or the appropriateness of community service or some other non-monetary service of equivalent value before imposing the $2,434.72 restitution order. Hence, the trial court has not yet exercised its broad discretion within the parameters of the restitution statute. *See Johnson v. United States.*[20] It has not yet made "a reasoned inquiry into [N.G.'s] ability to pay" and the goal of "promot[ing] the rehabilitation" of the juvenile. *See In re Don Mc.*[21]

---

**18.** Md.Code Ann., Crim. Proc. § 11–603 provides in relevant part:

    (a) A court may enter a judgment of restitution that orders a defendant or child respondent to make restitution in addition to any other penalty for the commission of a crime or delinquent act, if:

    (1) as a direct result of the crime or delinquent act, property of the victim was stolen, damaged, destroyed, converted, or unlawfully obtained, or its value substantially decreased....

*See In re Jose S. and Samuel B.*, 304 Md. 396, 499 A.2d 936, 938 (1985) ("judge may enter a restitution judgment only after a restitution hearing wherein evidence is produced that is legally sufficient to establish the statutory criteria"). *See also KP v. State*, 102 P.3d 217, 225–26 (Wyo.2004) ("at the very least, any order of restitution in a juvenile delinquency case must be the result of a direct causal connection between the juvenile's delinquent act and the damages or losses incurred").

**19.** *In re Jose S. and Samuel B.*, 499 A.2d at 938.

**20.** 398 A.2d 354 (D.C.1979).

**21.** 344 Md. 194, 686 A.2d 269, 273–74 (1996) ("The plain language of the statute clearly requires that the court must first consider the age and circumstances of the child" and "[t]he ability of the child to pay is a relevant factor for the court to consider when assessing the circumstances of the child"). The District contends that the trial court here made "a reasoned inquiry" based on *In re Delric H.*, 150 Md.App. 234, 819 A.2d 1117 (Md.2003) because of a conclusion there that the child soon would "be capable of earning money on a steady basis." *Id.* at 1128–29. But the record in *Delric H.* included much more than appears in the record before us. The trial court issued an order making the juvenile and his mother jointly liable for the restitution. *Id.* at 1128. The court heard the mother's testimony concerning her financial situation—her obligations and her income, and concluded that she was earning a living, "with very modest expenses," that no lump sum payment would be required, and that mother and son "could amortize the [restitution] obligation at the rate of $50 per month" (about $1.70 a day); the son would be responsible for about one-half of the restitution pay-

Since the record is devoid of factual findings on the issue of the damage caused by N.G.'s delinquent act, and because it is not clear from the record that the trial court considered the statutory factors of "age, circumstances, and financial ability of [N.G.] to pay" restitution, we are constrained to remand this case to the trial court.

Accordingly, for the foregoing reasons, we vacate the restitution order of the trial court and remand this case to the trial court for further proceedings consistent with this opinion.

*So ordered.*

ment which would amount to $.85 per day. *Id.* at 1128–29 In this case, there is nothing in the record regarding N.G.'s mother's finan- cial status, nor is there any order imposing liability on N.G.'s mother, nor is there any extended payment reflected in the order.