2006 WY 101

In the Interest of CT, Minor.

CT, Appellant (Defendant),

v.

The State of Wyoming, Appellee (Plaintiff).

Nos. C–05–14, C–05–15.

Supreme Court of Wyoming.

Aug. 14, 2006.

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna Domonkos, Appellate Counsel. Argument by Mr. Koski.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Leda M. Pojman, Assistant Attorney General. Argument by Ms. Pojman.

Before VOIGT, C.J., and GOLDEN, HILL *, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] This appeal challenges certain procedures and orders in a juvenile court matter. We reverse because the juvenile court did not follow statutory mandates.

## ISSUES

[¶ 2]   1.   Did the juvenile court violate the appellant's right to the due process of law by failing to advise him of the terms and conditions of probation?

2.   Did the juvenile court err by failing to consider a predispositional report prior to disposition?

3.   Did the juvenile court err by failing to select a statutory sanction level and by failing to impose the appropriate terms of probation for that sanction level?

## FACTS

[¶ 3]   The appellant, then fourteen years old, was charged in juvenile court on March 24, 2005, with having committed an act of juvenile delinquency—felony property destruction. After the juvenile petition was served upon him, a public defender was appointed as his attorney and guardian *ad litem*, and the court ordered the Department of Family Services (DFS) to prepare a pre-dispositional report.[1]   The appellant was briefly confined in a juvenile detention facility, but was released to his mother's custody. In the detention hearing order, the court ordered the appellant to obtain a psychological evaluation prior to disposition, and ordered that a multi-disciplinary team (MDT) convene as soon as possible in the appellant's interest.[2]

[¶ 4]   At arraignment the day after the petition was served, the appellant admitted the allegations of the petition. The juvenile court then entered an "Order of Arraignment and Final Disposition" with the following pertinent provisions:

1.   The appellant was adjudicated to be a delinquent child "as defined by W.S. 14–6–203."[3]

2.   The appellant was placed in the legal and physical custody of the State of Wyoming, for placement in the 90–day Youth

---

* Chief Justice at time of oral argument.

1.   Wyo. Stat. Ann. § 14–6–216 (LexisNexis 2005) requires appointment of a guardian *ad litem* in certain circumstances. Wyo. Stat. Ann. 14–6–222 (LexisNexis 2005) similarly requires appointment of counsel in certain circumstances. Wyo. Stat. Ann. § 14–6–227 (LexisNexis 2005) requires the court to order a predisposition study and report by DFS after the filing of any petition alleging that a child is delinquent.

2.   Wyo. Stat. Ann. § 14–6–219 (LexisNexis 2005) allows the court to order any child charged via juvenile petition to undergo a psychological or psychiatric evaluation. Wyo. Stat. Ann. § 14–6–227 (LexisNexis 2005) requires the court to appoint an MDT whenever a petition is filed alleging that a child is delinquent.

3.   Wyo. Stat. Ann. § 14–6–203 (LexisNexis 2005 & Supp.2006) defines the juvenile court's jurisdiction. The term "delinquent child" is defined in Wyo. Stat. Ann. § 14–6–201(a)(x) (LexisNexis 2005) as "a child who has committed a delinquent act." "Delinquent act" is defined in subsection (a)(ix) of the same statute as "an act punishable as a criminal offense by the laws of this state or any political subdivision thereof, or contempt of court under W.S. 14–6–242, or an act violating the terms and conditions of any court order which resulted from the criminal conviction of any child but does not include a status offense."

on Track Program at the Jeffrey C. Wardle Youth Academy, through Frontier Correctional Systems, Inc.

3. While in placement, the appellant was to undergo psychological, psychiatric, and medication evaluations.

4. The MDT was to convene at the earliest available date.

[¶ 5]  The MDT met on April 5, 2005, and filed its report a week later. The MDT recommended in that report that the appellant remain in the 90–Day Youth on Track Program. After a second meeting on June 21, 2005, the MDT filed a report recommending that upon discharge from Youth on Track, the appellant should (1) be placed on standard probation; (2) participate in a day treatment program during the summer; (3) receive individual and family therapy; and (4) return to school in the fall.

[¶ 6]  A second dispositional hearing was held on June 27, 2005, which was followed by an additional hearing occasioned by a dispute over the language of the proposed hearing order. At the second hearing, on July 7, 2005, appellant's counsel presented two objections to the order: (1) that it allowed Frontier Correctional Systems' staff to authorize immediate detention of the appellant upon any program violation; and (2) that it contained probationary conditions that had not been announced from the bench. As a result of the hearing, the juvenile court modified the order to require a hearing before detention in the event of a program infraction, but declined to adopt the appellant's position that all probationary conditions must be detailed in open court by the judge. The resultant Order of Further Disposition, filed on July 25, 2005, contained the following pertinent provisions:

1. Legal and physical custody of the appellant were returned to his mother.

2. The appellant was placed on probation for an indeterminate period of time, to be supervised by DFS.

3. The appellant was to "conform to the rules, regulations and conditions imposed by law, by the Court, and by the Probation Officer and shall sign a Probation Agree-

ment, and abide by the terms of that agreement."

4. The appellant also was to "abide by all rules and regulations of his current placement, to include those rules set forth in the document attached to this Court Order." [4]

In addition, the order contained several specific conditions, such as not violating the law, not consuming alcohol or controlled substances, participating in the day treatment program, abiding by a curfew, and attending therapy sessions.

[¶ 7]  On August 23, 2005, the appellant appealed the July 25, 2005 Order of Further Disposition. Shortly thereafter, because the appellant had completed the day treatment program, the juvenile court held a status/further disposition hearing. The Order of Status Hearing/Further Disposition resulting from that hearing was filed on October 14, 2005. It contained the following pertinent provisions, whereby the appellant:

1. Was left in the legal and physical custody of his mother.

2. Was released from further participation in the day treatment program.

3. Was to attend public school, was not to be a disciplinary problem, was not to be truant, and was to apply himself to attain better than passing grades.

4. Was to remain on probation for an indefinite period of time, supervised by DFS.

5. Was to "conform to the rules, regulations and conditions imposed by law, by the Court, and by the Probation Officer and shall sign a Probation Agreement, and abide by the terms of the agreement."

This order also contained the specific conditions included in the earlier order, plus the additional conditions that the appellant (1) not own, purchase, possess, or transport weapons or explosives; (2) allow his probation officer to visit him at his home, his employment site, or elsewhere; (3) comply with all instructions in matters affecting his supervision and cooperate by promptly and truthfully answering questions posed by his probation officer; (4) not leave the State of

---

4. The order found in the record has no attach- ments.

Wyoming without his probation officer's prior permission; (5) keep his probation officer informed of his whereabouts and all activities; and (6) submit such reports as may be required. Five days after the order from the October 14, 2005 hearing was filed, the appellant appealed therefrom. That appeal has been combined with his appeal from the order filed on July 25, 2005.

## STANDARD OF REVIEW

[¶ 8] The appellant's claim that his constitutional due process rights have been violated is reviewed *de novo* by this Court. *Meyers v. State,* 2005 WY 163, ¶ 8, 124 P.3d 710, 714 (Wyo.2005). The party claiming an infringement on his right to due process has the burden of demonstrating both that he has a protected interest and that such interest has been affected in an impermissible way. *DH v. Wyo. Dep't of Family Servs. (In re "H" Children),* 2003 WY 155, ¶ 38, 79 P.3d 997, 1008 (Wyo.2003), *reh'g denied* (January 13, 2004). Generally, sentencing decisions are reviewed for an abuse of discretion. *Bitz v. State,* 2003 WY 140, ¶ 7, 78 P.3d 257, 259 (Wyo.2003). Such discretion is limited, however, inasmuch as a court may not enter an illegal sentence. *White v. State,* 934 P.2d 745, 746 (Wyo.1997). A sentence is illegal if it violates the constitution or other law. *Martinez v. State,* 2002 WY 10, ¶ 9, 39 P.3d 394, 396 (Wyo.2002). An "error of law committed by the court under the circumstances" is an abuse of discretion. *White,* 934 P.2d at 746 (quoting *Garcia v. State,* 777 P.2d 603, 607 (Wyo.1989)). If there was no objection below, alleged errors are reviewed under our plain error standard, where the appellant must show (1) a clear record of the alleged error; (2) the violation of a clear and unequivocal rule of law; (3) denial of a substantial right; and (4) material prejudice. *Butcher v. State,* 2005 WY 146, ¶¶ 29, 33, 123 P.3d 543, 552, 553 (Wyo.2005).

## DISCUSSION

*Did the juvenile court violate the appellant's right to the due process of law by failing to advise him of the terms and conditions of probation?*

[¶ 9] Both the United States Constitution and the Wyoming Constitution provide that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1; Wyo. Const. art. 1, § 6. Although the United States Supreme Court and this Court have held that due process applies in juvenile proceedings and in probation revocation proceedings, neither court has specifically delineated the extent to which such protections are applicable during the dispositional stage of juvenile proceedings. In *Kent v. United States,* 383 U.S. 541, 562, 86 S.Ct. 1045, 1057, 16 L.Ed.2d 84 (1966), the United States Supreme Court reached the limited conclusion that a hearing to determine whether juvenile court jurisdiction should be waived "must measure up to the essentials of due process and fair treatment." Similarly, in *In re Gault,* 387 U.S. 1, 30–57, 87 S.Ct. 1428, 1445–1459, 18 L.Ed.2d 527 (1967), the Court held that the juvenile court proceedings that lead up to an adjudication of delinquency must provide due process of law, including sufficient notice of the charges, advisement of the right to counsel, and the right to confront and cross-examine witnesses. *TLL v. State (In the Interest of TLL),* 899 P.2d 44, 45–46 (Wyo.1995), holds similarly. Notably, for our present purposes, the Court in *In re Gault* declared, however, that "we [do not] here rule upon the question whether ordinary due process requirements must be observed with respect to hearings to determine the disposition of the delinquent child." *In re Gault,* 387 U.S. at 27, 87 S.Ct. at 1443. In a case finding that the Due Process Clause applies to, but does not necessarily prohibit, pretrial detention of juveniles, the U.S. Supreme Court explained that its goal in these cases is to strike a balance in juvenile court between the formalistic procedures of adult criminal court and the informal flexibility often sought in juvenile court. *Schall v. Martin,* 467 U.S. 253, 263, 104 S.Ct. 2403, 2409, 81 L.Ed.2d 207 (1984).

[¶ 10] Because both adult and juvenile probationers face a loss of liberty if they violate probation, they are entitled to notice of the terms and conditions of probation. Wyo. Stat. Ann. § 14–6–232 (LexisNexis 2005); 16C C.J.S. *Constitutional Law* § 1669 (2005); Neil P. Cohen, *The Law of Probation*

*and Parole* §§ 7.7, 7.16, 7.22 (2d ed. 1999 & Cumm. Supp.2005); 24 C.J.S. *Criminal Law* § 1556 (1989 & Supp.2005). Like the United States Supreme Court, however, this Court has recognized the uniqueness of the dispositional phase of juvenile proceedings and the resultant need for broad judicial discretion:

> However, the Fourth Amendment protections which apply to adult *probationers* do not necessarily apply to juvenile *probationers*. The dispositional phase of juvenile proceedings requires broad judicial discretion to accommodate the unique rehabilitative needs of juveniles. We hold that it is within the court's discretion to allow a probation officer to search a juvenile without reasonably suspecting that a probation violation exists.

> Other courts have recognized that minors' constitutional rights available in the adjudicatory stage are not necessarily applicable in the dispositional stage. The Supreme Court has found that in adjudicatory hearings minors are entitled to those rights which comport with due process and fair treatment under the Fourteenth Amendment to the United States Constitution. *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). However, the Supreme Court in *In re Gault*, recognizing the uniqueness of the disposition stage, specifically limited its finding to the adjudicatory stage. 387 U.S. at 13, n. 48, 87 S.Ct. at 1436, 1445 n. 31.

> This difference between the adjudicative and dispositional phases reflects the broad discretion judges need for making an appropriate disposition. Wyoming requires that, when entering an order of disposition, the court must do what is best suited for the public safety, the preservation of families, and the physical, mental, and moral welfare of the child. *See* Wyo. Stat. § 14–6–229(a) (Supp.1991). To fulfill this man-

date and to address the rehabilitative needs of juveniles, the court must have flexibility when it is formulating the probation conditions.

*In re Interests of ALJ*, 836 P.2d 307, 311 (Wyo.1992) (emphasis in original).

[¶ 11] As a general rule of *criminal law*, probationary conditions must be specific, but general conditions are acceptable if specific guidelines will follow:

> Generally, the probationer should be apprised of the conditions with which he must comply, and the court should state in its order the terms and conditions on which it grants the suspension or probation. To be enforceable a condition of probation must not be vague, indefinite, or uncertain, and a general condition of probation is permissible only so long as it is contemplated that the court or its designee will provide the probationer with reasonable, specific direction within the ambit of the initially expressed general condition, and such guidance is in fact given.

24 C.J.S. *Criminal Law* § 1556 (1989 & Supp.2005) (internal footnotes omitted). But juvenile court dispositions are different. Given that difference, these strict criminal court guidelines do not necessarily apply to the latter. *See WJH v. State (In re Interest of WJH)*, 2001 WY 54, ¶ 10, 24 P.3d 1147, 1151 (Wyo.2001). We conclude that the juvenile court in the instant case did not violate the appellant's right to the due process of law in fashioning the probation conditions as it did. As the record reflects, the recommendations of the MDT and the preliminary findings of the juvenile probation officer were included in the court's order, which meets the statutory purpose of designing individualized dispositions.[5] Beyond that, the appellant "signed off" on the probation conditions imposed by DFS, so he had actual knowledge of them.

5. Indeed, Wyo. Stat. Ann. § 14–6–304 (LexisNexis 2005) directly contemplates that the individualized probation conditions be prepared and explained to the juvenile by his or her probation officer:

(a) Under direction and supervision of the director of the department or division adminis-

trators, the designated department probation officers shall: . . .

(ii) Furnish to each person released on probation or home leave under his supervision a written statement of the conditions of the probation or home leave and instruct the youth regarding the conditions; . . .

***Did the juvenile court err by failing to consider a predispositional report prior to disposition and by failing to select a statutory sanction level?***

[¶ 12]   We are combining these issues for discussion because the similar reasoning applied to both issues leads to the same resolution—reversal.   Wyoming's Juvenile Justice Act contains clear mandates as to both predisposition reports and sanction levels.   In particular, Wyo. Stat. Ann. § 14–6–227(a) (LexisNexis 2005) requires that DFS conduct a thorough predisposition study in all delinquency cases, and Wyo. Stat. Ann. § 14–6–229(a) (LexisNexis 2005) requires the court to review the predisposition report before entering a disposition.   As to sanction levels, Wyo. Stat. Ann. §§ 14–6–245 through 14–6–252 (LexisNexis 2005), establish particular sanction levels for particular levels of misbehavior, with Wyo. Stat. Ann. § 14–6–246(d) requiring the court to state in writing its reasons for any deviation from the appropriate sanction level and to enter that statement into the record.

[¶ 13]   A predisposition study was ordered in the instant case, but there is no indication in the record that such was ever accomplished or that the court reviewed a predisposition report prior to disposition.   Furthermore, the statutory sanction level for felony property destruction is sanction level three, which provides for a maximum probationary term of twelve months.   Wyo. Stat. Ann. §§ 14–6–246(a)(iii) and 14–6–250(a)(ii).   In the instant case, the court twice entered dispositional orders placing the appellant on probation for an indefinite period, a sanction not available to the court unless expressly justified in writing on the record.

[¶ 14]   While we previously have held that the Juvenile Justice Act does not require absolutely strict compliance, we have also said that it cannot be "ignored with impunity."   *KP v. State*, 2004 WY 165, ¶ 30, 102 P.3d 217, 226 (Wyo.2004) (MDT report does not equal predisposition report, and the court must review both and follow recommendations thereof unless supporting on the record its decision to deviate therefrom); and *WJH*, ¶ 24, 24 P.3d at 1155 (sanction level must be assigned and any deviation therefrom must be explained on the record).

## CONCLUSION

[¶ 15]   The probationary disposition in this case did not violate the juvenile appellant's right to the due process of law.   The district court did, however, err in failing to consider a predisposition report and in failing to assign a sanction level and to justify deviation from the appropriate statutory sanction level.

[¶ 16]   Reversed and remanded for further proceedings consistent herewith.