257 P.3d 23 (2011)
2011 WY 108
In the Interest of K.C., a Minor Child, Appellant (Respondent),
v.
The STATE of Wyoming, Appellee (Petitioner).
No. S-10-0247.
Supreme Court of Wyoming.
July 12, 2011.
*24 Representing Appellant: Diane Lozano, State Public Defender; Tina N. Olson, Appellant Counsel; David E. Westling, Senior Assistant Appellate Counsel. Argument by Mr. Westling.
Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Stewart M. Young, Faculty Director, Jessica Y. Frint, Student Director, and Kevin Walton, Student Intern, of the Prosecution Assistance Program. Argument by Mr. Walton.
Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.
GOLDEN, Justice.
[¶ 1] K.C., a juvenile, was adjudged delinquent. As part of her disposition, she was allowed to remain in a home environment and placed on supervised probation for three to six months. K.C. violated various terms of her probation. In response, her probation was revoked and her disposition changed to placement at the Wyoming Girls' School for an indefinite period. K.C. appeals from the disposition. We affirm.

*25 ISSUES
[¶ 2] K.C. presents two issues for this Court's review:
I. Did the trial court abuse its discretion by acting in an arbitrary and capricious manner when it ignored Wyoming Statutes and case law concerning juvenile placements?
II. Did the trial court's conduct of the probation revocation hearing deny K.C. due process of law?

FACTS
[¶ 3] K.C. admitted shoplifting and was adjudged delinquent. Pursuant to the unanimous agreement of the parties and the recommendation of the multi-disciplinary team (MDT), she was placed on three to six months supervised probation. K.C. was allowed to remain living with her grandmother. Among the conditions of probation was a requirement that K.C. attend school regularly, with no unexcused absences, and get at least C grades in her classes.
[¶ 4] The juvenile court explained to K.C. that it would hold a review hearing in ninety days. If K.C. was following the terms of probation, especially regarding her attendance and grades at school, she "may not have to come back again." However, the juvenile court warned K.C. that if she was having problems at school "I can almost guarantee you your probation is going to be extended." The juvenile court emphasized to K.C.:
[Y]ou can come in here and if there aren't problems in school, it will either be dismissed or I'll say something like it will be dismissed in 30 or 60 days unless there's an objection. If you come in and there's problems at school, not only will you have to come back and see me, but this three to six months of supervised probation is likely to be six to nine months or six to twelve months on this. And you are in the driver's seat on this.
K.C. failed to comply with the terms of her probation regarding her education, leading the State to file a petition to revoke her probation. At the revocation hearing, K.C., then 16 years of age, admitted to failing in school and having multiple unexcused absences.
[¶ 5] The juvenile court proceeded to hear recommendations for disposition. The State explained that it would have liked to recommend the Hemry Home, a local residential program. However, at an MDT held the previous day, K.C. had indicated she would not comply with the rules of the Hemry Home. Under the circumstances, the State recommended K.C. be placed in the Wyoming Girls' School. The State also suggested, however, that it might help to set a disposition hearing for the next week to see if K.C. changed her attitude. K.C., through her attorney, recommended she remain with her grandmother. She also suggested another MDT meeting might be helpful. The juvenile court heard from K.C.'s mother and grandmother, who both felt it would do more harm than good to send K.C. to a residential program. The juvenile court also heard from a representative of K.C.'s then present school, who stated K.C. had not been to school for months and would therefore not be able to get any credit for the semester. Further, he noted K.C. did not show up for school after the MDT meeting of the previous day and did not show up for school the current morning. Finally, the juvenile court asked K.C. if she had anything she wanted to say, to which K.C. replied in the negative.
[¶ 6] The juvenile court proceeded with disposition. It determined:
I don't think I need to postpone it for an MDT. I think it is pretty clear. I have some experience with [K.C.] both from the previous case with her mother and this case.... [I]t seems apparent to me that the only viable placement at this point is the Wyoming Girls' School.
Accordingly, the juvenile court ordered K.C. be placed in the Wyoming Girls' School and set a review hearing for four months.

DISCUSSION

I. Abuse of Discretion Regarding Disposition
[¶ 7] A juvenile court enjoys broad discretion in formulating a disposition for a juvenile adjudged delinquent, but that *26 discretion is not unbounded. A juvenile court cannot enter a disposition that runs counter to law.
Generally, sentencing decisions are reviewed for an abuse of discretion. Bitz v. State, 2003 WY 140, ¶ 7, 78 P.3d 257, 259 (Wyo.2003). Such discretion is limited, however, inasmuch as a court may not enter an illegal sentence. White v. State, 934 P.2d 745, 746 (Wyo.1997). A sentence is illegal if it violates the constitution or other law. Martinez v. State, 2002 WY 10, ¶ 9, 39 P.3d 394, 396 (Wyo.2002). An "error of law committed by the court under the circumstances" is an abuse of discretion. White, 934 P.2d at 746 (quoting Garcia v. State, 777 P.2d 603, 607 (Wyo.1989)).
CT v. State, 2006 WY 101, ¶ 8, 140 P.3d 643, 646 (Wyo.2006). This is exactly what K.C. argues happened in this case. This Court reviews whether a disposition complies with statutory and case law de novo. Jackson v. State, 2009 WY 82, ¶ 6, 209 P.3d 897, 899 (Wyo.2009); Manes v. State, 2007 WY 6, ¶ 7, 150 P.3d 179, 181 (Wyo.2007).
[¶ 8] Wyoming's Juvenile Justice Act, Wyo. Stat. Ann. §§ 14-6-201 to -252 (LexisNexis 2011), delineates certain sanctions that may be imposed on a juvenile adjudged delinquent. The sanctions are divided into sanctions recommended for certain levels of delinquent behavior and a catch-all provision providing certain sanctions that are available for all sanction levels. The applicable statutes read, in pertinent part:
§ 14-6-246. Sanction levels.
(a) Subject to subsection (c) of this section, when a child is adjudicated as a delinquent the juvenile court may, in a disposition hearing, assign the child one (1) of the following sanction levels according to the child's conduct:
(i) For a misdemeanor punishable under the Wyoming Criminal Code by imprisonment for not more than six (6) months, the sanction level is one;
(ii) For a misdemeanor punishable under the Wyoming Criminal Code by imprisonment for not more than one (1) year, the sanction level is two;
(iii) For a felony, other than a violent felony as defined by W.S. 6-1-104(a)(xii), the sanction level is three;
(iv) For a violent felony as defined by W.S. 6-1-104(a)(xii), other than a felony punishable by life, life without parole or death, the sanction level is four;
(v) For a felony punishable under the Wyoming Criminal Code by life, life without parole or death, the sanction level is five.
* * * *
§ 14-6-247. Sanctions common to all levels.
(a) For a child at any sanction level, the juvenile court may:
* * * *
(viii) Order the child to be examined or treated by a physician, surgeon, psychiatrist or psychologist or to obtain other specialized treatment, care, counseling or training, and place the child in a hospital or medical facility, youth camp, school or other suitable facility for treatment[.]
Wyo. Stat. Ann. §§ 14-6-246, 247 (LexisNexis 2011).
[¶ 9] This Court has held that the sanctions delineated are merely guidelines and a juvenile court is free to impose any sanction it deems appropriate to meet the specific needs of the juvenile before the court. WJH v. State, 2001 WY 54, ¶¶ 12-16, 24 P.3d 1147, 1152-53 (Wyo.2001). The only qualification is that if a juvenile court deviates from statutorily delineated sanctions it must provide a written explanation on the record for the deviation. Id., ¶ 17, 24 P.3d at 1153; Wyo. Stat. Ann. § 14-6-246(d) (LexisNexis 2011). K.C. argues the juvenile court deviated from the applicable sanctions and presented no written explanation for the deviation.
[¶ 10] The State argues the district court did not deviate from the statutory sanction framework because ordering a juvenile to attend the Wyoming Girls' School is one of the sanctions available to all levels. We agree. Section 14-6-247(a)(viii) provides that a juvenile court may order a juvenile to attend school as necessary for treatment. The Wyoming Girls' School is a residential program offering rehabilitation treatment as *27 well as education. Wyo. Stat. Ann. § 25-4-102 (LexisNexis 2011). Placement at the Wyoming Girls' School falls within the statutorily allowable sanctions applicable to K.C. The juvenile court, thus, was not required to provide a written justification for the placement.

II. Due Process
[¶ 11] K.C. argues various due process rights were violated during the dispositional phase of the probation revocation hearing. This Court reviews such claims de novo. CT, ¶ 8, 140 P.3d at 646.
Wyo. Const. art. 1, § 6, provides that "[n]o person shall be deprived of life, liberty or property without due process of law." The similar provision found in the Fifth Amendment to the United States Constitution was made applicable to the states by the Fourteenth Amendment. "Notice and the opportunity to be heard are touch stones of this due process of law." Pecha v. Smith, Keller & Associates, 942 P.2d 387, 391 (Wyo.1997). The notice and hearing opportunity must be "appropriate to the nature of the case," and the opportunity to be heard must be "`at a meaningful time and in a meaningful manner.'" Jones v. Jones, 903 P.2d 545, 548 (Wyo. 1995) (quoting Moore v. Board of Educ. of Fulton Public School No. 58, 836 S.W.2d 943, 947 (Mo.1992), cert. denied, 507 U.S. 916, 113 S.Ct. 1270, 122 L.Ed.2d 666 (1993)). The party claiming an infringement of his right to due process has the burden of demonstrating both that he has a protected interest and that such interest has been affected in an impermissible way. Meyer v. Norman, 780 P.2d 283, 289 (Wyo. 1989). The question is whether there has been a denial of fundamental fairness. Id.

DH v. Wyo. Dep't of Family Servs., 2003 WY 155, ¶ 38, 79 P.3d 997, 1008 (Wyo.2003).
[¶ 12] First, K.C. argues the juvenile court violated her right against self-incrimination as found in the Fifth Amendment to the United States Constitution. She refers specifically to her statement at the immediately preceding MDT that she would not follow the rules of the Hemry Home. She argues there is no evidence she was informed of her right against self-incrimination before she made that statement in the MDT meeting and thus the juvenile court should not be allowed to use the statement in determining the appropriate disposition for her.
[¶ 13] The fallacy in K.C.'s argument is that the right against self-incrimination does not apply at the dispositional phase of delinquency proceedings. The privilege unquestionably applies to the adjudicatory phase of a delinquency proceeding. See Wyo. Stat. Ann. § 14-6-223 (LexisNexis 2011). The dispositional phase, however, only occurs after an adjudication of delinquency. The sole issue before the juvenile court during the dispositional phase is the proper corrective action to be imposed. Any statement considered in the dispositional phase serves to assist the juvenile court in formulating the most appropriate individualized disposition. In other words, any statement considered is not used to incriminate a juvenile but rather to help the juvenile receive the most appropriate, individualized disposition. K.C. argues that her statement regarding the Hemry Home was used to her detriment. It could be argued that the opposite is true. In the context of juvenile delinquency proceedings, her statement could be said to have been used for her benefit.
[¶ 14] Second, K.C. argues the juvenile court violated her due process rights by not properly advising her of the maximum penalty she might face if she admitted violating the terms of her probation. She cites to W.R.Cr.P. 11(b)(1) for the proposition that the juvenile court should have advised her she might face placement at the Wyoming Girls' School if she admitted to getting bad grades and having unexcused absences from school.
[¶ 15] The Wyoming Rules of Criminal Procedure apply to delinquency proceedings unless inconsistent with the Juvenile Justice Act. W.R.Cr.P. 1(a). The plain language of W.R.Cr.P. 11 reveals the rule falls within the exception. The title of the rule, "Pleas," reflects that it applies to criminal pleas. Subsection (b)(1) states:

Advice to Defendant.Except for forfeitures on citations (Rule 3.1) and pleas entered *28 under Rule 43(c)(2), before accepting a plea of guilty or nolo contendere to a felony or to a misdemeanor when the defendant is not represented by counsel, the court must address the defendant personally in open court and, unless the defendant has been previously advised by the court on the record and in the presence of counsel, inform the defendant of, and determine that the defendant understands, the following:
(1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law and other sanctions which could attend a conviction including, when applicable, the general nature of any mandatory assessments (such as the surcharge for the Crime Victim Compensation Account), discretionary assessments (costs, attorney fees, restitution, etc.) and, in controlled substance offenses, the potential loss of entitlement to federal benefits.
It requires, in part, certain advisements from the trial court to the defendant as to potential punishments before the trial court can accept pleas of guilty or nolo contendere.
[¶ 16] Rule 11 is inconsistent with the Juvenile Justice Act in several ways. Most importantly, one of the purposes of a delinquency proceeding is "[t]o remove, where appropriate, the taint of criminality from children committing certain unlawful acts." Wyo. Stat. Ann. § 14-6-201(c)(ii)(B) (LexisNexis 2011). The question for adjudication is whether the allegations contained in the petition alleging delinquency are true. A finding that the allegations are true "is not deemed a conviction of guilt, but is a determination that judicial intervention is necessary for the best interest and welfare of the child and the public." Wyo. Stat. Ann. § 14-6-225(b) (LexisNexis 2011). Thus, a rule relating to criminal guilty or nolo contendere pleas is inapplicable in the juvenile delinquency setting.
[¶ 17] It also is unworkable in a juvenile delinquency proceeding to comply with the advisement requirements of Rule 11, specifically as to minimum or maximum sentences. A juvenile delinquency proceeding entails no set minimum or maximum penalties. Rather, a juvenile delinquency proceeding envisions an individualized disposition taking into account the therapeutic needs of the juvenile based on the juvenile's circumstances. As stated above, a juvenile court faces minimal restrictions in formulating an individualized disposition. With the wide range of options available to the juvenile court in making a disposition, no advisement as contemplated by Rule 11 is practical. Consequently, the advisement provisions of Rule 11 are inconsistent with, and therefore inapplicable to, juvenile delinquency proceedings.[1]

CONCLUSION
[¶ 18] We find no abuse of discretion or violation of K.C.'s due process rights in her disposition after the revocation of her probation. Although it is better practice for a juvenile court to provide a record of its reasoning in making a particular disposition, it is not necessary as long as the terms of the disposition are within the statutory sanction scheme. In this case, no written justification for K.C.'s placement at the Wyoming Girls' School was necessary because placement at the Wyoming Girls' School is a disposition available at all sanction levels.
[¶ 19] The juvenile court's consideration of K.C.'s statement to the MDT that she would not follow the rules at the Hemry Home did not violate K.C.'s right against self-incrimination pursuant to the Fifth Amendment of the United States Constitution. The statement was considered only in the dispositional phase of the delinquency proceedings.
[¶ 20] Finally, there was no violation of W.R.Cr.P. 11 because the rule does not apply to juvenile delinquency proceedings. Finding no error as alleged by K.C. on appeal, the *29 district court's placement of K.C. at the Wyoming Girls' School is affirmed.
NOTES
[1] K.C. obliquely suggests it was error for the juvenile court not to advise her at the initial dispositional hearing of the possibility that a violation of her conditions of probation could lead to placement at the Wyoming Girls' School. She offers, however, no analysis of the issue. Consequently, the issue is not properly before this Court, and we will not address it.