# THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 114

APRIL TERM, A.D. 2022

September 20, 2022

IN THE INTEREST OF:

MBP,

Appellant
(Defendant),

v.

THE STATE OF WYOMING,

Appellee
(Plaintiff).

S-22-0021

*Appeal from the District Court of Sweetwater County*
*The Honorable Susannah G. Robinson, Judge*

*Representing Appellant:*
> Office of Public Defender: Diane M. Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Robin S. Cooper, Senior Assistant Appellate Counsel.

*Representing Appellee:*
> Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames*, Senior Assistant Attorney General; Catherine M. Mercer**, Assistant Attorney General.

*\* An Order Allowing Withdrawal of Counsel was entered on August 1, 2022.*
*\*\* An Order Allowing Withdrawal of Counsel was entered on September 2, 2022.*

**Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.**

**NOTICE:** This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FENN, Justice.**

[¶1]    MBP, a juvenile, was adjudicated delinquent for fighting in public.  As part of MBP's disposition, the juvenile court placed him on supervised probation for three to six months.  MBP appeals from the disposition and argues the evidence is insufficient to establish an agreement to fight.  He further contends the juvenile court erred when it imposed a range of months for his sanction of probation.  We affirm.

## ISSUES

[¶2]    MBP presents two issues on appeal, which we state as follows:

> I.  Was there sufficient evidence to support an agreement to fight?
>
> II. Did the juvenile court violate a clear and unequivocal rule of law when it placed MBP on probation for three to six months for a sanction level one offense?

## FACTS

[¶3]    On April 28, 2021, MBP and RV were both eighth-grade students at the public middle school in Sweetwater County, Wyoming, when they fought in the hallway of the school.  The State filed a delinquency petition in juvenile court alleging MBP committed a delinquent act by fighting in public in violation of Wyoming Statute § 6-6-101 (LexisNexis 2019).

[¶4]    MBP, RV, and another student testified at the adjudicatory hearing.  The juvenile court also received a surveillance video of the fight.  MBP claimed RV was the aggressor, and he acted in self-defense.  The juvenile court found:

> The elements of fighting in public . . . are that on or about the 28th day of April 2021, in Sweetwater County, Wyoming, . . . the juvenile, [MBP], by agreement fought with one or more persons in public.  Most of these elements are quite clear and have been proven beyond a reasonable doubt.  There was testimony as to what day it happened, that it was the 28th of April 2021.  That it did occur in Sweetwater County, Wyoming.  It was clear . . . one of the individuals involved was [MBP], he was identified in the courtroom by [RV].
>
> I'm going to the last element, fought with one or more persons

1

in public. It is clear from the video that there was an incident that occurred that the Court does consider is beyond a reasonable doubt fighting with one person who would be [RV] who testified today, and that it did occur in public which is the school which is clearly a public place.

The one question I think that everyone is aware of what has been the focus is whether or not there was an agreement. There has been argument that this occurred in self-defense as well as that [MBP] was not the initial aggressor, that he was in fear for his safety. I went through the video very closely. It's only 18 seconds and so I tried to narrow it down second by second as to what occurred and here is what the Court could see:

> At around second four to five [RV] can be seen what appears to be pulling [MBP's] hair. There was . . . testimony that [MBP] made a statement to [RV] prior to that [RV] was slow. That was clear from the testimony that that did occur. That . . . it appeared to be an insult to [RV]. Then it appears that [RV] pulled [MBP's] hair at second six. [MBP] is then seen following closely behind [RV] as [RV] is walking away from him and almost is stepping on top of him he is so close to him. There was testimony by [MBP] that he was trying to get around him, but from the video that does not appear to be what is happening.

> At second seven [RV] turned and body checks [MBP] with his shoulder. [MBP] steps back or is pushed back as a result of that. Then at second eight [RV] puts down the items that are in his hand. At approximately second nine [MBP] then starts to put his items down, but doesn't look like he is able to do that. At second ten [RV] then shoves [MBP]. At second 11 [MBP] then puts his things down. At second 12 [MBP] steps toward [RV]. At second 13 [MBP] then shoves [RV]. Then at approximately second 15 both of them are walking towards each other with their arms at least outstretched to some degree. Then at second 16 [MBP] is jumping or moving forward towards [RV]. And then they are both out of sight because of the camera view.

2

This is, again, a very short video, but between approximately sec[ond] 13 and sec[ond] 16 it does appear and the Court does find beyond a reasonable doubt that this was an implied agreement between the two boys that they were going to fight each other in a public place, meaning the school.

I certainly understand the arguments that [defense counsel] is making, but from the video it just doesn't appear that [MBP] appears fearful for his safety. It does appear that . . . there are multiple points where both of the boys could have walked away and neither chose to do that. Then they are seen both going towards each other like they are wanting and agreeing to fight.

So the Court does find that the State has proved [fighting in public] beyond a reasonable doubt.

[¶5]   During the dispositional phase, the juvenile court found the offense constituted a sanction level-one offense. It held: "[MBP] should be placed on probation consistent with that low-level offense which in this case would be not less than three nor more than six months of supervised probation to be supervised by juvenile probation." The juvenile court clarified "[t]hat means if [MBP] is doing well after three months that he could be released before six months. If he is not doing well then it would go potentially six months." The court entered its order of disposition on August 30, 2021. This appeal timely followed.

## STANDARD OF REVIEW

[¶6]   When reviewing a claim that the evidence was insufficient to support an adjudication of delinquency, we use the same standards and principles that are applicable to cases tried to a jury. *In re CG*, 2011 WY 28, ¶ 10, 248 P.3d 186, 188–89 (Wyo. 2011) (quoting *Trumbull v. State*, 2009 WY 103, ¶ 9, 214 P.3d 978, 980 (Wyo. 2009)). We decide whether the evidence could reasonably support the finding by the factfinder. *Neidlinger v. State*, 2021 WY 39, ¶ 22, 482 P.3d 337, 344 (Wyo. 2021); *Gore v. State*, 2019 WY 110, ¶ 9, 450 P.3d 1251, 1253 (Wyo. 2019).

This Court examines the evidence in the light most favorable to the State. We accept all evidence favorable to the State as true and give the State's evidence every favorable inference which can reasonably and fairly be drawn from it. We also disregard any evidence favorable to the appellant that conflicts with the State's evidence.

*Cotney v. State*, 2022 WY 17, ¶ 9, 503 P.3d 58, 63 (Wyo. 2022) (quoting *Birch v. State*, 2018 WY 73, ¶ 25, 421 P.3d 528, 536 (Wyo. 2018)); *CG*, ¶ 10, 248 P.3d at 188–89. "We defer to the credibility determination of the juvenile court." *In re DT*, 2017 WY 36, ¶ 33, 391 P.3d 1136, 1146 (Wyo. 2017).

[¶7]   "[J]uvenile proceedings require[] broad judicial discretion to accommodate the unique rehabilitative needs of juveniles." *In re CT*, 2006 WY 101, ¶ 10, 140 P.3d 643, 647 (Wyo. 2006) (quoting *In re ALJ*, 836 P.2d 307, 311 (Wyo. 1992)).  We review a juvenile court's discretionary decision for an abuse of discretion and will not overturn such a decision unless it exceeds the bounds of reason under the circumstances. *See Dobbins v. State*, 2012 WY 110, ¶ 29, 298 P.3d 807, 815 (Wyo. 2012) (quoting *Van Haele v. State*, 2004 WY 59, ¶ 15, 90 P.3d 708, 713 (Wyo. 2004); *KP v. State*, 2004 WY 165, ¶ 12, 102 P.3d 217, 221 (Wyo. 2004).

[¶8]   "A juvenile court enjoys broad discretion in formulating a disposition for a juvenile adjudged delinquent." *In re KC*, 2011 WY 108, ¶ 7, 257 P.3d 23, 25–26 (Wyo. 2011).  Such discretion is limited, however, inasmuch as "[a] juvenile court cannot enter a disposition that runs counter to law." *Id.*  We review whether a disposition is contrary to law de novo. *Id.*  If a juvenile court enters a disposition contrary to law, such a decision amounts to an abuse of discretion. *Id.* (quoting *CT*, ¶ 8, 140 P.3d at 646).

[¶9]   "If there was no objection below, alleged errors are reviewed under our plain error standard, where the appellant must show (1) a clear record of the alleged error; (2) the violation of a clear and unequivocal rule of law; (3) denial of a substantial right; and (4) material prejudice." *CT*, ¶ 8, 140 P.3d at 646; *KP*, ¶ 13, 102 P.3d at 221.  "To the extent the issues concern a . . . question of law, our review is de novo." *CG*, ¶ 10, 248 P.3d at 188–89.

## DISCUSSION

[¶10]  The juvenile court adjudicated MBP delinquent for fighting in public pursuant to Wyoming Statute § 6-6-101.  It placed MBP "on supervised probation for a period of not less than three months and not more than six months."  MBP argues the evidence is insufficient to support the adjudication.  He further contends the sentence imposed is contrary to law.

### I.    *Sufficiency of the Evidence*

[¶11]  A person commits the crime of fighting in public "if, **by agreement**, he fights with one (1) or more persons in public." Wyo. Stat. Ann. § 6-6-101 (emphasis added).  The juvenile court found beyond a reasonable doubt that the interaction between the two boys "was an implied agreement . . . that they were going to fight each other in a public place."  MBP challenges the juvenile court's finding and argues there was no evidence of either an

explicit or implicit agreement. While he concedes he "was involved in a fight that took place in a public setting," he argues that he did not form the requisite intent for an agreement to fight. He contends there must be evidence of an actual agreement prior to the commencement of the fight, and since he reacted to RV pulling his hair there was no agreement. We disagree and find the facts and circumstances of this case reasonably support the requisite intent and establish an implicit agreement to fight.

[¶12] The formal requirements of an agreement between two (2) or more persons to commit an unlawful act are not stringent—in that a meeting of the minds concept is unnecessary. *Jordin v. State*, 2018 WY 64, ¶ 19, 419 P.3d 527, 532–33 (Wyo. 2018) (quoting *Ekholm v. State*, 2004 WY 159, ¶ 22, 102 P.3d 201, 207 (Wyo. 2004)). An understanding to engage in the same combat by consent will suffice to establish an agreement to fight. 2A C.J.S. *Affray* § 2 (Sept. 2022 update). An agreement to fight does not need to be premeditated, but it does require an intention to fight rather than an innocent reaction to an aggressor. 3 Jens David Ohlin, *Wharton's Criminal Law* § 38:1 (16th ed., Sept. 2022 update); 12 Am. Jur. 2d *Breach of Peace, Etc.* § 18 (August 2022 update); 2A C.J.S. Affray § 9 (Sept. 2022 update). An intent and agreement to fight may be inferred from words, acts, and conduct occurring either before, during, or after the fight. 2A C.J.S. *Affray* § 9; *Ekholm*, 2004 WY 159, ¶ 22, 102 P.3d at 207–08 (finding the prosecutor may rely on inferences drawn from the course of conduct to establish evidence of an agreement).

[¶13] In *Pollock v. State*, the Texas appellate court upheld the defendant's conviction for fighting in public when the evidence showed a history of disagreements and insults between the defendant and his fighting companion. 22 S.W. 19, 19–20 (Tex. Crim. App. 1893). During the particular fight, the fighting companion approached the defendant on a public road, asked if he insulted him, and then struck him. *Id.* The defendant struck back, and the fighting ensued. *Id.* The court held:

> Mere words are not a fighting, within the definition of [fighting in public]; and if one, by insulting language, provokes another to attack him in a public place, but offers no resistance to the attack when made, he does not become guilty of this offense. If he were himself ready to fight, while the other gave the first blow, it would be otherwise. Looking to the evidence, the defendant, though reluctantly, entered the combat with some zeal, was "rough" in his remarks, and vigorous in his efforts, during the fight; and the fighting occurred in a public road. **In this attitude of the case, it is immaterial who struck the first blow, for both are guilty of [fighting in public]. Self-defense was not an issue in the case, and defendant could not justify his action on the ground that he did not strike the first blow.**

5

*Id.* (emphasis added) (internal citations omitted); *see also Farrow v. State*, 2019 WY 30, ¶ 26, 437 P.3d 809, 818 (Wyo. 2019) ("[T]wo individuals who mutually agree to fight are both considered aggressors, making a self-defense theory unavailable to either of them.").

[¶14]  MBP's intention and agreement to fight are reasonably inferred from his actions after he insulted RV.  The evidence shows a history of discord between MBP and RV.  MBP testified RV ridiculed him on the day of the fight.  Later, in response, MBP approached RV from behind and called him "slow."  RV pulled MBP's hair because he was mad about MBP's comment.  RV testified he "planned on grabbing [MBP's] hair, telling him to knock it off and just walking away."

[¶15]  The video shows after RV pulled MBP's hair, RV turned away and walked in the opposite direction down a different hallway.  Instead of allowing RV to walk away, MBP followed him.  The juvenile court rejected MBP's testimony that he was trying to walk around RV.  The record reasonably supports the juvenile court's finding.  MBP provoked RV by insulting him, and instead of refraining from entering into a fight after RV pulled his hair, he followed RV and voluntarily fought with RV.  He tackled RV to the ground and was on top hitting RV when another student pulled him off of RV.  MBP cannot escape a finding of delinquency simply because RV struck first, nor can he claim self-defense.  The evidence is sufficient to support MBP and RV fought in public by agreement.

## II.    *Probationary Term*

[¶16]  MBP argues the juvenile court's imposition of a probationary term for a range of months instead of a specific number of months is "premised on a mistaken reading of the law" and amounts to "an abuse of discretion."  The State argues the issue is moot because MBP completed his probation.

[¶17]  "Mootness is a question of law that we review de novo." *In re DJS-Y*, 2017 WY 54, ¶ 6, 394 P.3d 467, 469 (Wyo. 2017).  "An issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Id.*  "The rule that a case must be dismissed when it becomes moot is not absolute." *Id.* at ¶ 7, 394 P.3d at 469.  We recognize three exceptions to the mootness doctrine and will consider a moot issue "when: (1) the issue is one of great public importance; (2) we have deemed it necessary to provide guidance to state agencies and lower courts; or (3) the controversy is capable of repetition yet evading review." *Id.* (quoting *Circuit Court of the Eighth Judicial Dist. v. Lee Newspapers*, 2014 WY 101, ¶ 12, 332 P.3d 523, 528 (Wyo. 2014)).  Here, we find the second exception applies and consider the merits of this issue to provide guidance to Wyoming's juvenile courts and state agencies. *See generally id.* at ¶¶ 6–20, 394 P.3d at 469–72 (considering the merits of mother's argument the juvenile court lacked authority to extend a consent decree for an additional six months even though the abuse and neglect case was closed); *City of Casper v. Simonson*, 2017 WY 86, ¶ 16 n. 7, 400 P.3d 352, 355 n.7 (Wyo. 2017) (considering the merits of defendant's appeal after his probationary term

expired to provide guidance to a municipal court); *see also In re RM*, 2004 WY 162, ¶¶ 8–9, 102 P.3d 868, 871–72 (Wyo. 2004) (considering whether the juvenile court can order a school district to provide an education to a student lawfully expelled when the one-year expulsion period expired because it is unlikely the expulsion would still be in place by the time the court reviews the matter).

[¶18]   MBP did not object to the probationary term below and instead raised his contention for the first time on appeal.  Our review is therefore confined to a search for plain error under Wyoming Rule of Appellate Procedure 9.05. *KP*, 2004 WY 165, ¶ 13, 102 P.3d at 221; *In re KAA*, 2001 WY 24, ¶ 8, 18 P.3d 1159, 1161 (Wyo. 2001).  Under our review for plain error, MBP must "establish a violation of a clear and unequivocal rule of law in a clear and obvious, not merely arguable, way." *Hartley v. State*, 2020 WY 40, ¶ 12, 460 P.3d 716, 719 (Wyo. 2020); *Joreski v. State*, 2012 WY 143, ¶ 11, 288 P.3d 413, 416 (Wyo. 2012).

[¶19]   MBP argues the juvenile court is statutorily limited to impose a specific number for a term of probation.  He claims imposing a range of months "does not allow for . . . uniform and consistent consequences . . . and is contrary to the authority granted by statute."  MBP relies on our holding in *In re WJH*, 2001 WY 54, 24 P.3d 1147 (Wyo. 2001).  He suggests we reversed the juvenile court's imposition of probation for an indefinite term and held "[t]he juvenile court is statutorily limited to impose only the specific sanctions set out in the statutes."  MBP's reliance on *WJH* is misplaced.

[¶20]   In *WJH*, the juvenile court adjudicated the juvenile delinquent and placed him on probation "for an indefinite period of time under specific terms and conditions." 2001 WY 54, ¶ 6, 24 P.3d at 1150.  The issue on appeal was "whether, in the disposition of an admitted juvenile delinquency petition, the juvenile court is statutorily limited to impose only the specific sanctions set out in [the Juvenile Justice Act,] Wyo. Stat. Ann. §§ 14-6-245 through 14-6-252." *Id.* at ¶ 7, 24 P.3d at 1150.  We concluded the sanctions under the Juvenile Justice Act were guidelines and the juvenile court was not mandated to impose the sanctions delineated under the Juvenile Justice Act. *Id.* at ¶¶ 11–17, 24 P.3d at 1152–53.  We held that limiting the juvenile court to only the statutory sanctions "is inconsistent with the language of the statutes and the philosophy of juvenile justice and serves only to hamstring the judicial system to the detriment of the very juveniles it is endeavoring to steward." *Id.* at ¶ 11, 24 P.3d at 1152.  We determined the catchall provision of Wyoming Statute § 14-6-246(d) "indisputably provides the juvenile court with the ability to impose any sanctions it deems appropriate." *Id.* at ¶¶ 15–16, 24 P.3d at 1153 (citing Wyo. Stat. Ann. § 14-6-246(d) ("Nothing in [the Juvenile Justice Act] prohibits the imposition of appropriate sanctions that are different from those provided at any sanction level.")).

[¶21] We reversed and remanded the juvenile court's decision on the indefinite probationary term; however, our reversal was not based on a determination that an indefinite probationary period was not in accordance with law. *Id.* at ¶¶ 9–21, 24 P.3d at

1151–55. Our decision upheld the juvenile court's authority to deviate from the sanction guidelines but required the juvenile court to set forth written reasons for deviating from the guidelines. *Id.* We reversed and remanded for the juvenile court to include a written explanation for any deviation. *Id.* at ¶ 20, 24 P.3d at 1154–55. We further declined to address whether the juvenile court can impose an indefinite term of probation and community service hours in lieu of restitution. *Id.* at ¶ 21, 24 P.3d at 1155.

[¶22] Without citing to any authority, MBP argues "[l]ike adult probation, it is clear that juvenile probation must be a specific and certain number." We previously declined to apply the guidelines applicable to adult criminal probation to juvenile probation, because "juvenile court dispositions are different." *CT*, 2006 WY 101, ¶¶ 10–11, 140 P.3d at 646–47; *see also WJH*, 2001 WY 54, ¶ 10, 24 P.3d at 1151 ("Wyoming's legislature has recognized that juveniles and adults are not similarly situated. Juvenile proceedings are designed to rehabilitate and protect the juvenile, not to punish him."). "Juvenile delinquency proceedings are not criminal prosecutions but are special proceedings that serve as an ameliorative alternate to the criminal prosecution of children." *WJH*, 2001 WY 54, ¶ 10, 24 P.3d at 1151 (quoting *Interest of W.L.F.*, Nos. 0–760, 00–0939, 2001 WL 103522, at *1 (Iowa Ct. App. Feb.7, 2001). We are not persuaded by MBP's argument.

[¶23] We reaffirm the sanctions listed under the Juvenile Justice Act "are merely guidelines and a juvenile court is free to impose **any sanction** it deems appropriate to meet the specific needs of the juvenile before the court." *K.C.*, 2011 WY 108, ¶ 9, 257 P.3d at 26 (citing *WJH*, 2001 WY 54, ¶¶ 12–16, 24 P.3d at 1152–53) (emphasis added). The sole requirement for the juvenile court to deviate from the statutorily delineated sanctions is that it "provide a written explanation on the record for the deviation." *Id. (*citing *WJH*, ¶ 17, 24 P.3d at 1153); Wyo. Stat. Ann. § 14-6-246 ("If the juvenile court deviates from the guidelines under this section it shall state in writing its reasons for the deviation and enter the statement into the record.").

[¶24] The juvenile court adjudicated MBP delinquent for a sanction level-one offense. The Juvenile Justice Act allows the district court to place MBP on probation for a sanction level-one offense "for not less than three (3) months nor more than six (6) months." Wyo. Stat. Ann. § 14-6-248(a)(i). There is no mandate that the probationary term be for a specific number of months. The juvenile court's decision to place MBP on supervised probation for a range of three to six months falls within the sanction guidelines and is within the juvenile court's broad discretion. Wyo. Stat. Ann. § 14-6-248(a)(i); *K.C.*, 2011 WY 108, ¶ 18, 257 P.3d at 28 (finding no abuse of discretion or violation of the minor's due process rights when the juvenile court revoked her probation of three to six months and placed her at the Wyoming Girls' School for an indefinite period). Under a plain error review, MBP failed to establish the juvenile court violated any clear and unequivocal rule of law.

## CONCLUSION

[¶25]  The evidence in the record reasonably supports the juvenile court's finding of an implicit agreement between MBP and RV to fight in public.  Further, MBP failed to establish the juvenile court's imposition of a three-to-six-month probationary term constituted plain error.  We therefore affirm the juvenile court's adjudication and order of disposition.